Filed 9/11/25  Nguyen v. Superior Court CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CAN QUANG NGUYEN,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY;<br><br>    Respondent;<br><br>QUYEN CHAU NGUYEN,<br><br>    Real Party in Interest. | G063358<br><br>(Super. Ct. No. 20D000784)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Thomas S. McConville, Judge. Petition granted.

Arthur J. Travieso and Arthur J. Travieso for Petitioner.

No appearance for Respondent

Law Offices of Kathy T. Luong and Kathy T. Luong; Mazur & Mazur and Janice R. Mazur for Real Party in Interest.

*      *      *

After the trial court partially granted Quyen Chau Nguyen's Family Code section 2122[1] motion to set aside a judgment entered pursuant to a marital settlement agreement, Can Quang Nguyen filed a notice of appeal from the resulting order.[2] He argues the court erred in finding Quyen's motion was timely because the undisputed evidence demonstrated Quyen knew or should have known about Can's failure to comply with statutory disclosure requirements, on which she based her motion, at the time she signed the martial settlement agreement roughly two years prior to filing her motion. In addition, he contends the court abused its discretion in concluding Quyen was entitled to an equitable distribution of the undisclosed retirement accounts in his name.

Although we find the order from which Can appeals is not appealable, we exercise our discretion to treat the appeal as a petition for writ of mandate. On the merits, we conclude Quyen's motion was untimely because, as a matter of law, she should have discovered Can's failure to disclose the disputed retirement accounts at the time the parties signed the martial settlement agreement. With the set-aside motion being filed outside the maximum one-year limitations period for filing such a motion pursuant to section 2122, the motion should have been denied in full. Accordingly, we

---

[1] All further statutory references are to the Family Code unless otherwise stated.

[2] Because the parties have the same last name, we refer to them by first name. No disrespect is intended.

issue a peremptory writ of mandate directing the trial court to vacate the challenged order and enter a new order denying the set-aside motion in its entirety.

FACTS

I.

THE MARITAL SETTLEMENT AGREEMENT AND JUDGMENT

After more than 20 years of marriage, and after their children reached the age of majority, Can filed a marital dissolution petition in late January 2020. About one week later, the parties signed and had notarized a marital settlement agreement (MSA). The MSA conveyed the parties' intent "to resolve all issues remaining in their case" and "waive any inequality [in division of their assets and debts] in the interest of reaching a full and final resolution of their matter." Consistent with that intent, it specified it "contain[ed] the entire agreement of the parties on [the] matter," no other agreement or promise made on or before its effective date would be binding unless in writing and signed by both parties, and subsequent modifications would need to be in writing and signed by both parties.

In addition to providing for a $1,000 monthly spousal support payment from Can to Quyen, the MSA specified the way community property would be divided. Can was to take as his sole and separate property: the marital residence, along with any encumbrances and liabilities associated with it; "any and all retirement plans, 401K plans, pension benefits or other accrued benefits through [his] current or former employer(s)"; bank accounts in his name alone; and cash, household goods and furniture, and personal effects in his possession. Quyen was to take as her sole and separate property: "any and all retirement plans, 401K plans, pension benefits or other accrued benefits through [her] current or former employer(s)"; bank accounts

3

in her name alone; and cash, household goods and furniture, and personal effects in her possession.

The MSA also contained various waiver and disclosure related provisions. Under a "Retirement Plan" heading, the "parties waive[d] any and all right, title and interest each may have in any retirement plans and benefits in the name of their spouse and any plans and/or benefits that exist are confirmed to each party as their separate property." A financial disclosures section stated: (1) the parties complied with section 2104 "regarding the exchange of preliminary declarations of disclosure"; (2) the parties each "understand[] that noncompliance with those obligations will result in the court setting aside the judgment"; (3) the parties complied with section 2102 "and have fully augmented the preliminary declaration of disclosure"; (4) the parties waived the filing of a final declaration of disclosure; and (5) such waiver did not "limit the legal disclosure obligations of the parties but rather [was] a statement under penalty of perjury that those obligations [were] fulfilled." And, in a section concerning legal counsel, the parties acknowledged they each "voluntarily refused to consult with any attorney, . . . read and underst[ood] the contents and legal effect [of the MSA,] . . . entered into it and signed it freely and voluntarily, and . . . waive[d] any right to rescind or set aside [the MSA] except upon a finding that there has been an actual misrepresentation, knowingly made with intent to defraud."

Pursuant to a request by Can, and consistent with a provision in the MSA, the trial court entered default against Quyen in June 2020 due to her lack of response to the dissolution petition. A few days later, the court entered judgment, dissolving the marriage and dividing property as specified

4

in the MSA, which it attached to the judgment. That same day, the court sent the parties a notice of entry of judgment.

## II.

## THE SET-ASIDE MOTION

In February 2022, Quyen filed a motion to set aside the default and the judgment pursuant to section 2122, or alternatively for a postjudgment division of property and enforcement of an equalization payment. In an accompanying declaration, she stated Can represented during their negotiation of the MSA that he had disclosed all martial assets and debts to her and "that he would buy [her] interest in the family residence . . . for One Hundred and Fifty Thousand Dollars." He did not include the agreed upon equalization payment in the MSA, he never made the equalization payment, and he failed to disclose two of his retirement accounts (the Aerospace retirement accounts).[3] Quyen noted Can provided her a list of his financial accounts, including the Aerospace retirement accounts, when they contemplated divorce in 2014. She forgot about the information until after they divorced in 2020 and subsequently located it in her old files. Attached to the motion was a declaration of disclosure, signed by Can and dated February 2020, which only listed one asset—the marital residence.

Can opposed the motion. In a declaration, he stated he and Quyen discussed divorce on more than one occasion before he filed for divorce in 2020. During those discussions, they listed all their assets and detailed

---

[3] The facts we recite focus on the retirement accounts because the issues on appeal solely concern the trial court's ruling with respect to the accounts.

5

how everything would be split, including their house and retirement accounts. One such discussion took place in 2014, at which time Can provided Quyen the balances and account information for the Aerospace retirement accounts. He acknowledged the accounts were not listed in his 2020 declaration of disclosure, but said they were reflected in the income and expense declaration he provided to Quyen along with it.

The court held a hearing on the set-aside motion, with testimony from the parties taking place over the course of two days, one in July 2022 and one in September 2022.

Quyen testified she voluntarily, and without coercion or threat, initialed each page of the MSA and signed where Can told her to sign, but she did not read each page because she trusted he would be "decent toward [her]." As for the retirement accounts, she testified that in July 2014, Can emailed her a list of accounts and their then respective balances, including the disputed Aerospace retirement accounts. She said she forgot about the accounts thereafter and had no recollection of them at the time she signed the MSA in 2020. The only retirement accounts she knew about when she signed the MSA were two Vanguard accounts, one of which was hers and one of which was his. She thought the monthly retirement payments referred to in Can's 2020 income and expense declaration concerned his Vanguard account. Quyen stated she "suddenly" remembered about the Aerospace retirement accounts around July 2021 when Can refused to make house related equalization payments to her. She looked through her emails and found the 2014 communication from Can. Had she remembered those accounts in 2020, she would not have agreed to give up all rights to them.

Can testified he and Quyen agreed to forego the use of lawyers to effectuate their divorce, and they provided information to a legal company

6

that assisted with drafting the MSA. He acknowledged the only asset listed on the preliminary declaration of disclosures he provided to her before they signed the MSA was their house. She did not provide him with any disclosure declaration. Regarding the Aerospace retirement accounts, Can confirmed he provided her a list of all accounts and their balances in 2014 when they were contemplating getting a divorce so they could figure out how to divide them. He also explained he gave Quyen the usernames and passwords to the accounts in case something ever happened to him while traveling on business. Because she had all the information, he assumed she was aware of the accounts in 2020, so they did not specifically discuss each one. He did not change the login information for his accounts until three to four months after entry of the dissolution judgment.

## III.

### THE TRIAL COURT'S RULING AND ORDER

After hearing argument from counsel for each side the trial court issued an oral ruling. It recognized the first point of contention was whether Quyen's motion was timely filed pursuant to section 2122, which it explained provides a one-year statute of limitations for a set-aside motion based on fraud or failure to comply with statutory disclosure requirements. The court concluded the motion was timely as to the Aerospace retirement accounts, but not as to the equalization payment concerning the house. The latter conclusion stemmed from evidence of conversations between the parties in the five months following entry of judgment—nearly a year and a half before Quyen filed her motion. Regarding the retirement accounts, the court found Quyen "was credible in stating that she first learned or recalled of the retirement accounts in July 2021 when she was in the process of reviewing other documents." It further explained it would be "unfair" to expect her to

7

recall something from 2014, noting that during the hearing Can was asked about something which occurred in 2014 and he said he could not remember because it was a long time ago.

After finding Can's failure to disclose the retirement accounts materially affected the original outcome, the trial court then turned to the appropriate relief. Rather than set aside the MSA, it decided the Aerospace retirement accounts would be excepted from the terms of the MSA and equitably divided based on the value accrued during marriage and prior to the date of separation. At the close of the hearing, the court ordered counsel to meet and confer on how to execute modifications to the judgment, recognizing the parties did not present any valuation evidence. It continued the matter to a future date for that purpose. The court's partial grant, and partial denial, of Quyen's motion was reflected in a minute order for that day, as was the continuance "for [an] update on values."

The subsequent hearing was continued on two occasions, and in the meantime the case was assigned to a new judge. In April 2023, the new judge heard from Quyen's counsel concerning the status of obtaining values for the retirement accounts—it was still a work in progress. Can's counsel also requested the court order Quyen's counsel to prepare an order concerning the entitlement findings made in September 2022 and signaled Can's intent to appeal once the court entered the order. The court so directed Quyen's counsel, indicating it would provide the proposed order to the judge who had ruled on the entitlement aspect of the motion, and continued the matter.

At the end of June 2023, another hearing took place. Quyen's counsel indicated she submitted a proposed order and received back a copy of it signed by the prior judge. It appeared to the court the signed order was not

8

filed, and Can's counsel had not received a copy. Can's counsel expressed concern about whether the prior judge considered objections he filed to the proposed order; the court did not see any objections in the case docket. To allow time to sort out the circumstances surrounding the signed order, the court once again continued the matter.

Ultimately, the order signed by the prior judge in mid-June 2023 was filed in late-October 2023, and the court set a future date for a trial regarding the value of the retirement accounts. In mid-November 2023, Can appealed from the October filed order.

## DISCUSSION

Can challenges the trial court's grant of Quyen's set-aside motion concerning the Aerospace retirement accounts on two grounds, one related to the timeliness of the motion and the second concerning the court's decision to equitably divide the community property value of the accounts. In response, Quyen argues Can's appeal was untimely and, alternatively, defends the court's rulings concerning timeliness of her motion and division of the retirement accounts. For reasons we explain, we treat the purported appeal as a petition for writ of mandate and conclude the court erred in finding Quyen's motion to be timely.

### I.

### APPEALABILITY AND TIMELINESS OF APPEAL

Quyen's initial briefing on appeal contends Can's appeal was not timely filed. This court requested supplemental briefing from the parties on two even more fundamental issues: whether the order appealed from is an appealable order, and if not, whether this court should exercise its discretion to treat the appeal as a petition for a writ of mandate. Because we conclude the relevant order is not appealable, but we nevertheless exercise our

9

discretion to treat the appeal as a writ petition, we do not reach Quyen's timeliness argument.

"""There is no constitutional right to an appeal; the appellate procedure is entirely statutory and subject to complete legislative control."' [Citations.] Appellate jurisdiction cannot be created by consent, waiver, or estoppel. [Citations.] 'A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment.' . . . 'Whenever there is doubt as to whether we have jurisdiction to hear an appeal, we must raise that issue on our own initiative.'" (*In re Marriage of Lafkas* (2007) 153 Cal.App.4th 1429, 1432.)

"Although Code of Civil Procedure section 904.1, subdivision (a)(2) makes appealable 'an order made after a judgment made appealable by paragraph (1),' this does not literally mean that *any* order after a previous judgment is appealable. To be appealable, a postjudgment order must meet certain requirements. [Citation.] Some postjudgment orders are not appealable because, 'although following an earlier judgment, [they] are more accurately understood as being preliminary to a later judgment, at which time they will become ripe for appeal. [¶] . . . [¶] . . . [Such postjudgment orders lack] finality in that they [are] also preparatory to later proceedings.'" (*In re Marriage of Ellis* (2002) 101 Cal.App.4th 400, 403.)

Here, the October 2023 filed order Can purports to appeal from is undoubtedly a postjudgment order. But, it is preliminary to later proceedings because it only adjudicates Quyen's entitlement to a portion of the disputed retirement accounts. Valuation of the accounts to determine the appropriate division was left for another day. Indeed, the order expressly states the court continued the matter "for [an] update on values" and to allow the parties' counsel to "meet and confer on how they want to execute on the [c]ourt's

10

[j]udgment or modifications of the [j]udgment."[4] Being preliminary to a full resolution of the retirement accounts division, the order is not sufficiently final to be appealable. (See *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1217–1218; *In re Marriage of Ellis* (2002) 101 Cal.App.4th 400, 403 (*Ellis*); *In re Marriage of Levine* (1994) 28 Cal.App.4th 585, 589.)

Nevertheless, we exercise our discretion to construe the purported appeal as a writ petition. (*Ellis, supra*, 101 Cal.App.4th at p. 404 [appellate court has discretion to treat appeal from nonappealable order as petition for extraordinary writ].) Quyen's underlying motion was filed in February 2022, the hearing at which the trial court orally ruled on entitlement pursuant to the motion occurred in September 2022, the issues on appeal are fully briefed, Quyen urges us to treat the matter as a writ petition,[5] and adjudicating the merits may conserve resources by obviating the need for further proceedings concerning valuation and division. Under these circumstances, resolving the issues now serves to prevent unnecessarily dilatory and circuitous proceedings. (See *In re Marriage of Varyonis* (1988) 202 Cal.App.3d 712, 714, fn. 1, disapproved of on other grounds in *Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1126.)

---

[4] To date, the valuation has not taken place, and the judgment has not been amended. On our own motion, we judicially notice the trial court's minute orders which postdate the October 2023 filed order. Pursuant to a motion by Can, the court stayed further proceedings concerning the retirement accounts pending the outcome of this appeal.

[5] Can did not file a supplemental brief in response to our order providing for such opportunity.

## II.

### LAW APPLICABLE TO SET ASIDE OF A DISSOLUTION JUDGMENT

Like other judgments, "judgments of dissolution are entitled to res judicata as to all questions determined by them." (*Weir v. Ferreira* (1997) 59 Cal.App.4th 1509, 1515.) However, like other judgments, a dissolution judgment may be set aside under certain circumstances. "[B]ased on the recognition that '[t]he public policy of assuring finality of judgments must be balanced against the public interest in ensuring proper division of marital property, in ensuring sufficient support awards, and in deterring misconduct,'" the Legislature enacted Family Code section 2122. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1144; see also Fam. Code, § 2120, subd. (c).) Outside the six-month period within which a party may move to set aside a judgment under Code of Civil Procedure section 473, Family Code section 2122 sets out the exclusive grounds and time limits for an action or motion to set aside a marital dissolution judgment. (Fam. Code, § 2121, subd. (a); *In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 683–684 (*Rosevear*).)

The six available grounds for relief from a dissolution judgment, or portion thereof, under section 2122 include fraud, perjury, duress, mental incapacity, mistake, and failure to comply with statutory disclosure obligations. In addition to making findings regarding one or more of those grounds for relief, the court must make additional findings. Specifically, the court must also "find that the facts alleged as the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief." (§ 2121, subd. (b).)

The time for seeking relief pursuant to section 2122 is relatively short. "'Unlike traditional equitable set-aside law where "laches" is the only

12

time limit on relief . . . , [the statutory scheme] accommodates the public policy interest in putting an end to litigation and ensuring the "finality" of family law judgments by setting *absolute deadlines* on obtaining a post-[judgment] set[ ]aside. Once the statutorily-prescribed period expires ([§ 2122]), set-aside relief is *not available* and the judgment is effectively *final for all purposes.*'" (*In re Marriage of Georgiou & Leslie* (2013) 218 Cal.App.4th 561, 571.) Relevant here, "[a]n action or motion based on failure to comply with the disclosure requirements [set forth in section 2100 et seq.] shall be brought within one year after the date on which the complaining party either discovered, or should have discovered, the failure to comply." (§ 2122, subd. (f).)

## III.

### STANDARD OF REVIEW

Appellate courts review a trial court's ruling on a motion to set aside a marital dissolution judgment for abuse of discretion, which generally requires applying the substantial evidence standard to factual findings. (*In re Marriage of Diamond* (2024) 106 Cal.App.5th 550, 566 (*Diamond*); *In re Marriage of Walker* (2012) 203 Cal.App.4th 137, 146.) "'"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."' [Citations.] The burden is on the complaining party to establish abuse of discretion. [Citations.] The showing on appeal is insufficient if it presents a state of facts which simply affords an opportunity for a difference of opinion." (*Rosevear, supra*, 65 Cal.App.4th at p. 682.) That said, "[a] proper exercise of judicial discretion requires the exercise of discriminating judgment within the bounds of reason, and an absence of

13

arbitrary determination, capricious disposition, or whimsical thinking. . . . 'Discretion is abused in the legal sense '"whenever it may be fairly said that in its exercise the court . . . contravened the uncontradicted evidence."""""" (*Id.* at pp. 682–683.)

As for timeliness of a section 2122 set-aside motion, the time limits set forth in the statute are effectively statutes of limitations for seeking relief from a dissolution judgment. Accordingly, a trial court's determination regarding timeliness, including findings concerning accrual of the limitations period, is normally a question of fact reviewed on appeal for substantial evidence. (See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810 (*Fox*); *Madani v. Rabinowitz* (2020) 45 Cal.App.5th 602, 607.) However, where relevant facts are undisputed, the effect of the statute of limitations may be decided as a question of law. (See *International Engine Parts v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611; *Madani*, p. 607.)

IV.

TIMELINESS OF THE SET-ASIDE MOTION

Quyen sought relief concerning the Aerospace retirement accounts based on Can's undisputed failure to list the accounts on the preliminary declaration of disclosures he provided to her, which was the only disclosure provided by either party prior to the signing of the MSA. Accordingly, in determining the timeliness of the motion, the trial court applied section 2122, subdivision (f), which limits the filing of a set-aside motion to within "one year after the date on which the complaining party either discovered, or should have discovered, the failure to comply" with marital dissolution related disclosure requirements.

As the trial court implicitly recognized, under the circumstances of this case, when Quyen discovered or should have discovered the failure to

14

disclose the relevant accounts hinges on when she knew or should have known about the accounts. Having been presented with a declaration of disclosure which did not list any retirement accounts, actual or constructive knowledge of the disputed accounts would mean she discovered or should have discovered the failure to disclose.

Substantial evidence supports the trial court's finding that Quyen did not know of the Aerospace retirement accounts until July 2021. She testified she did not remember about the existence of the accounts until that time, and the court found her testimony on that point credible. We must defer to the court's credibility determination. (See *Diamond, supra*, 106 Cal.App.5th at p. 570.)

The analysis concerning Quyen's constructive knowledge is more complex. Whether a person should have known or should have discovered something, commonly referred to as the "discovery rule" in the accrual of a limitations period context, involves an objective look at circumstances. Generally, a person is charged with presumptive knowledge of a fact "if they have ""information of circumstances to put [them] *on inquiry* [about it]"" or if they have ""*the opportunity to obtain knowledge* [about it] from sources open to [their] investigation."""" (*Fox ,supra,* 35 Cal.4th at pp. 807–808; see also Civ. Code, § 19 ["Every person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he or she might have learned that fact"].) Stated differently, a person is charged with knowledge of information that would have been revealed through the exercise of reasonable diligence. (See *Fox*, at p. 808.)

Can first argues the lack of any retirement account information in the disclosure declaration "put Quyen on notice that the disclosure was

15

deficient" because she testified that at the time she received the disclosure and signed the MSA she knew he had a retirement account, just not the ones presently at issue. But such an argument wrongly presupposes knowledge of any failure to disclose is sufficient, alone, to trigger the one-year limitations period for a set-aside motion. The key focus is the particular information alleged not to have been disclosed. Actual or constructive knowledge of a failure to disclose information about one asset is insufficient, alone, to start the clock running as to a different asset.

Nevertheless, we are unable to find any evidence to support a conclusion that Quyen should not have known about the Aerospace retirement accounts prior to July of 2021 when she "suddenly" remembered about them. All the evidence concerning what she should have known was undisputed: in 2014, the parties discussed divorce and Can provided Quyen with a list of all their various accounts, including the Aerospace retirement accounts; Can also gave her the username and passwords to the Aerospace retirement accounts; Quyen saved the 2014 email from Can listing the accounts; in July 2021, Quyen was able to find that email by simply looking in her documents. With the information prompting her knowledge readily accessible in her own files, Quyen necessarily should have known of the Aerospace retirement accounts at the time she signed the MSA and in the months thereafter. This is particularly so because the MSA and an income and expense declaration provided to her by Can before they signed the MSA should have triggered thoughts about retirement accounts. Indeed, the MSA discussed retirement plans and benefits in three different places, including an express waiver of each party's right to any portion of the other's plans or benefits. In addition, Can's income and expense declaration listed a $2,000 monthly deduction for non-IRA/401K retirement accounts, but Quyen

16

testified she only recalled his 401K at the time. Although Quyen testified she did not read the MSA in detail before signing it, she confirmed she was not pressured or coerced into signing it and voluntarily agreed to not have an attorney involved. (*Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565, 1588 [absent fraud, overreaching, or excusable neglect, person who signs written instrument may not avoid impact of its terms on ground they failed to read it before signing it].)

Given the circumstances, because an exercise of reasonable diligence in looking through her own files would have revealed to Quyen the existence of the Aerospace retirement accounts before she signed the MSA, or anytime thereafter, the undisputed evidence was she should have discovered Can's failure to disclose them at that time. (See Civ. Code, § 19; *Fox, supra*, 35 Cal.4th at pp. 807–808.)

In concluding otherwise, the trial court hinged its reasoning on the six-year passage of time between when Can provided Quyen the list of their accounts and the signing of the MSA. It felt it would be "unfair" to expect a person to recall something from six years prior. While passage of time arguably may impact a person's actual knowledge, it is insufficient, alone, to support a conclusion of a lack of constructive knowledge or discovery. This is because constructive knowledge goes beyond what a person may actually recall, imputing to a person knowledge that would have been revealed through the exercise of reasonable diligence.

Because, as a matter of law, Quyen should have known about the Aerospace retirement accounts at the time she received Can's disclosure declaration and signed the MSA, she should have discovered Can's failure to disclose them at that time as well. Accordingly, her section 2122 set-aside

17

motion filed roughly two years later was untimely and should have been denied on that ground.

## DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate its order partially granting and partially denying Quyen's set-aside motion, and to enter a new order denying the motion in full. Can is entitled to costs on appeal.

DELANEY, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

MOORE, J.

18