Filed 5/8/13  Marriage of Shah and Shaw CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re Marriage of MAHMUNIR SHAH and ASLAM SHAW. | |
| MAHMUNIR SHAH, | G046448 |
| Respondent, | (Super. Ct. No. 02D002833) |
| v. | O P I N I O N |
| ASLAM SHAW, | |
| Appellant. | |

Appeal from postjudgment orders of the Superior Court of Orange County, Mark Millard, Judge.  Affirmed.

Aslam Shaw, in pro., per., for Appellant.

No appearance for Respondent.

\*          \*          \*

Aslam Shaw appeals from postjudgment orders issued in this marital dissolution case. Shaw argues the trial court erred by (1) denying his motion to set aside the judgment on the ground of economic distress; (2) imposing only $500 in sanctions against Shaw's former wife Mahmunir Shah, despite her prolonged failure and refusal to comply with orders to satisfy tax liens filed against a property belonging to him; and (3) refusing to set aside a prior order imposing $6,000 in sanctions against him. We affirm the orders.

Shaw's primary contention is that the trial court was biased against him, and its bias affected these challenged decisions. He devotes a large portion of his brief to detailing the many instances in which he believes the court demonstrated its bias. We conclude the claim is waived. Shaw's remedy for apparent judicial bias is a motion to disqualify the judge. His failure to promptly pursue that remedy precludes his reliance on the assertion as a ground for reversal on appeal.

Shaw's challenge to the substance of the court's orders fares no better. His motion to vacate the judgment was supported by no evidence at all, only argument. And even if the factual assertions contained in his motion were treated as evidence, they demonstrated nothing more than that Shaw's own attorney had advised him to relinquish certain claims and Shaw acquiesced because he lacked the resources to continue litigating. Those circumstances do not constitute the type of "duress" which would justify setting aside the judgment; nor do they suggest the judgment was unfair. As for the sanctions order issued against Shaw's former wife, the amount to be imposed is a matter committed to the trial court's discretion and we cannot interfere with the court's exercise of that discretion unless we are convinced the amount was so unreasonable as to constitute an abuse. Shaw has made no such showing.

Finally, we conclude the court properly denied Shaw's motion to set aside its order imposing monetary sanctions against him. As the court noted in its order, the motion was unsupported by any admissible evidence. Moreover, neither the fact that

2

Shaw was "surprised" by the court's decision to issue sanctions against him nor the fact he was unable to have his own motion for sanctions heard at the same time constitutes a basis for setting aside the order.

FACTS

As we noted in our prior opinion affirming the parties' marital dissolution judgment (*In re Marriage of Shah and Shaw* (Sept. 21, 2010, G042012) [nonpub. opn.], this dissolution process has been protracted: "Ten years after they were married, husband obtained a divorce in Pakistan. Wife, who did not believe the judgment was valid, filed the instant case, in which husband filed a motion to quash. From the approximate period of the purported Pakistani divorce, the parties had entered into several agreements dealing with the 'status of their marriage,' property division, support, and custody and visitation." (Opinion, p. 3.)

Nearly 10 years ago, in April of 2003, the parties engaged in mediation and resolved most of their disputes concerning the division of marital assets. Then, in 2008, the parties tried their remaining disputes in the superior court. The court ruled Shaw had improperly allowed third party liens to be placed on "the Bishop Street Property" awarded to his former wife in the mediation, and ordered that he immediately clear those liens from the property and deed the property to her. The court rejected Shaw's claim that his former wife had violated a court order by placing a lis pendens on the "Barbara Ann Property" awarded to him in the mediation, noting she had done so while the property remained community owned, but ordered she expunge the lis pendens "forthwith." Finally, the court also rejected Shaw's claim that his former wife had violated a court order pertaining to a Maui property which was later sold, and resolved the parties' offsetting financial claims relating to that property with an award of $9,381 to

3

Shaw. After the court entered judgment, Shaw appealed and we affirmed it in September of 2010.

Meanwhile, in May of 2010, Shaw's former wife filed an order to show cause (OSC) requesting an award of $25,000 in sanctions against him pursuant to Family Code section 271. She based her request on Shaw's alleged filing of frivolous pleadings and his failure to appear at required hearings, both of which caused her to incur unnecessary attorney fees, as well as on the allegedly false allegations Shaw made against her and her attorney. The court took testimony pertaining to the OSC in July of 2011, and found that Shaw's conduct, and "specifically [his] name calling of the Petitioner and Petitioner's counsel, on numerous occasions, in his pleadings," was sanctionable. The court ordered Shaw to pay $6,000 to his former wife. Approximately a week after the order, Shaw filed a request for statement of decision.

Within two weeks of the sanctions order, Shaw moved to set it aside pursuant to Code of Civil Procedure section 473. He claimed the order was the product of "inadvertence" because he had been wrongly advised by a court clerk that he could not file his own motion for sanctions against his former wife unless he first filed his latest income and expense report. He also argued the order was a surprise because the court had relied on "Guidelines of the State Bar" in imposing the sanctions, even though he is not an attorney. Moreover, he claimed surprise because the court sanctioned him for "name-calling" when the things he said were true. As he explained: "Stating the fact is 'never uncivil' and telling the truth is never 'name-calling.'"

Shaw's motion to set aside the sanctions order was not supported by any admissible evidence. It was accompanied only by a declaration stating, under penalty of perjury, that Shaw was "familiar with the foregoing facts in the motion . . . based on my personal knowledge, information and belief" and he "respectfully request[ed] the Court to grant [it.]"

4

In March of 2011, Shaw moved to vacate the judgment based on an assertion of "economic and other forms of duress." He claimed to have "a mountain of evidence" proving his own attorney had "engaged in unlawful collusion" with his former wife and her attorney concerning issues encompassed in the judgment, which he would "present at the new trial, if [the motion were] granted."

Shaw argued he had been under "duress" at the time the judgment was entered because his own attorney had colluded with his former wife and her attorney, and had wrongfully agreed with their purported mischaracterization of "the 'reserved issue' in the [mediation agreement]." Shaw also claimed his attorney had placed a lien for fees on Shaw's residence, and had "forced" Shaw to follow his advice. None of those assertions was supported by admissible evidence; instead, Shaw again purported to support his motion with a declaration simply stating, under penalty of perjury, that he was "familiar with the foregoing facts in the motion" and if called as a witness could testify "based on my personal knowledge, information and belief."

In August 2011, Shaw filed his own motion for sanctions against his former wife, based on her failure to comply with the court's orders to satisfy tax liens with money which Shaw had paid to her for that express purpose. Shaw claimed it was obvious his former wife's attorney "advised her not to [o]bey this [c]ourt's orders, as he has done repeatedly. Furthermore, [the attorney] also advised her to breach her fiduciary duty willfully. He did not withdraw from the case despite her disobedience of the [c]ourt [o]rders as any ethical attorney would have." But again, the motion was supported by nothing more than Shaw's own declaration under penalty of perjury, stating he was "familiar" with the facts stated therein "based on my personal knowledge, information and belief," and requesting the court grant the motion.

All of the motions came on for hearing in December 2011. Shaw appeared in pro. per., and his former wife appeared through the attorney who had represented her at trial. After the court invited Shaw to argue in favor of his motion to vacate the judgment,

5

Shaw began by registering his objection to his former wife's attorney "coming back into this case . . . ." Shaw claimed her attorney had "started this whole fiasco in 2007[; had] intentionally disobeyed this court's orders [and had] prolonged this case, prolonged the settlement for four years . . . ." He also asserted, as he had claimed in the motion to vacate, that his former wife's attorney had "engaged in unlawful collusion with my former attorney . . . ." More particularly, he claimed "some of the major things that they both colluded and conspired is [sic] to prevent my attorney from presenting my case properly, asserting my claims that properly should have been asserted from the very beginning." Shaw then expressed concern that if his former wife's attorney were not removed from the case, he would "drag it out for another four years or eight years."

The court then offered the attorney an opportunity to respond to Shaw's assertions; after the attorney declined, the court denied the oral motion to disqualify him, noting it was both untimely and unsupported by any legal authority.

With respect to the motion to vacate the judgment, Shaw argued that when the judgment was entered, he was experiencing significant economic duress because he was facing very large debts which he believed Shah should also be held liable for, and because his attorney "was not cooperating, he was not representing my case." He characterized economic duress as "when you internally surrender to these outside pressures." The court denied the motion, explaining to Shaw "there is no satisfactory evidence before the court that you were under duress. You were represented at all times by an attorney. Maybe you have dissatisfaction with what the attorney did for you. If so, you have remedies against that attorney . . . but there are no[] remedies to set aside a judgment after the judgment has been final and after the judgment has been appealed and after this court finds that there is no economic duress during the trial . . . ."

The court then moved on to Shaw's request for sanctions against his former wife based on her failure to pay the tax liens. Both parties acknowledged the liens had finally been paid, albeit nearly a year and a half after the court had ordered it be done.

6

Shaw claimed he had been damaged by his former wife's delay because: (1) he had promptly paid her the $10,000 required to have the liens removed, and her failure to use the money for its intended purpose for nearly a year and a half "deprived [him] of [his] use of [it]"; and (2) he had to pay two attorneys nearly $12,000 to address the delay. He argued it was unacceptable for his former wife to have ignored the court's order for so long and consequently the court should "send her a message . . . ." In response, the attorney representing Shaw's former wife argued Shaw actually shared responsibility for much of the delay in paying off the liens; he also pointed out Shaw had offered no evidence supporting his claim of having incurred substantial attorney fees to rectify the problem.

The court explicitly found that Shaw did share responsibility for the lengthy period of delay between the court's initial order requiring the liens be paid, which had been issued in March 2009, and its second order specifically requiring Shaw's former wife to pay off liens within 21 days, issued in July of 2011. However, the court acknowledged Shaw's former wife was solely responsible for being 14 days late in complying with that second order. The court noted it did not view this two week delay as "particularly egregious," but decided it would sanction her nonetheless because Shaw had previously been subjected to sanctions for doing other things improperly. The court then set the amount of the sanctions at $500, and ordered it be treated as an offset against the sanctions Shaw had been previously ordered to pay.

The court next heard argument on Shaw's motion to set aside the sanctions order previously entered against him. When Shaw claimed the sanctions had been imposed against him based on name calling, the court clarified that the name calling had been only part of the justification, noting "you also filed a number of motions a number of times and then took them off calendar so everybody could prepare for them . . . before you [took] them off calendar. That was part of that too. It was conduct which interfered with the proper administration of this case."

7

Shaw replied that the court's order had mentioned only name calling as a basis for the sanction, and asserted that his former wife and her counsel had engaged in at least as much name calling as he had. He requested that the court award sanctions against his former wife for her name calling. The attorney representing Shaw's former wife then pointed out that a motion to set aside an order should be based on some new facts or law not presented at the original hearing, and Shaw had made no effort to show either. Counsel suggested that instead of making that required showing, Shaw was merely attempting to reargue the same facts the court had already considered in making the sanction order initially. The court took the motion to set aside under submission.

Five days after the hearing, the court issued an order denying Shaw's motion to set aside the sanctions order. In its minute order, the court stated Shaw had alleged insufficient facts to justify setting aside the sanctions order, and his purported declaration in support of the relief was "in the form of points and authorities," and was thus not a proper declaration. Further, the court stated Shaw's arguments at the hearing "do not justify the relief requested under Code of Civil Procedure [section] 473, on which he relies." The court also ruled no statement of decision was required on a motion matter.

DISCUSSION

1. *Shaw's Claim of Judicial Bias*

Shaw first contends the trial court judge was biased against him and these challenged orders were a product of that bias. Shaw made the exact same assertion of bias in his earlier appeal from the judgment and we rejected it on the basis it was unsubstantiated. His reassertion of that claim here relies on events dating back to 2007, of which he has asked us to take judicial notice. He also devotes much of his brief to detailing the many instances in which the judge displayed apparent bias throughout the

8

course of the litigation.  But because the orders Shaw now challenges were issued in 2011 – long after the judge's alleged bias became apparent to him – and Shaw does not claim he ever made an effort to disqualify the judge, we conclude the contention is waived.

A litigant's primary remedy for perceived judicial bias is the right to request disqualification of the judge under Code of Civil Procedure section 170.3 (section 170.3).  The party's failure to promptly make that request constitutes a waiver of the claim. "A party may seek a judge's disqualification for cause under the procedure set forth at section 170.3, subdivision (c).  However, the party must do so 'at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification.'  (§ 170.3, subd. (c).)  This strict promptness requirement is not to be taken lightly, as a failure to comply constitutes forfeiture or an implied waiver of the disqualification." (*Tri Counties Bank v. Superior Court* (2008) 167 Cal.App.4th 1332, 1337.)

A party cannot do what Shaw has done here, which is to participate in litigation before a judge he believes to be biased without seeking relief under section 170.3, and then later challenge the result on appeal based on the perceived bias:  "The purpose of the requirement that alleged grounds for disqualification be asserted at the earliest practicable opportunity is that ""'[i]t would seem . . . intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not."'" [Citations.]  In other words, '[a] party should not be allowed to gamble on a favorable decision and then raise such an objection in the event he is disappointed in the result.'" (*Tri Counties Bank v. Superior Court, supra*, 167 Cal.App.4th 1332, 1337-1338; see *People v. Scott* (1997) 15 Cal.4th 1188, 1207 ["Here, defendant knew all the facts he now cites by the time he waived a jury, about four months before the trial.  Yet he *never*

9

objected to the judge's presiding over the trial or otherwise sought her disqualification. It is too late to raise the issue for the first time on appeal"].)

Because Shaw made no effort to have the judge disqualified under section 170.3 based on the alleged bias which Shaw claims was apparent beginning in 2007, he has waived any claim on appeal that orders issued by that same judge in 2011 must be reversed on that ground.

## 2. *Motion to Vacate Judgment*

Shaw also contends the court erred by denying his motion to vacate the judgment under Family Code section 2122, subdivision (c), which allows a party to move to set aside a judgment of dissolution, or any part thereof, on the basis of "duress," within two years of the judgment's entry. The contention is unpersuasive, however, because the motion was both factually unsupported and legally deficient.

Shaw's motion was accompanied by a memorandum of points and authorities which was rife with conclusory factual assertions. For example, Shaw contended his own attorney had "engaged in unlawful collusion and . . . intentionally failed to introduce extremely crucial evidence and adequately and professionally represent the respondent at trial and misled this [c]ourt into making the rulings it made." Shaw did not, however, explain the details of this collusion, or identify either the purportedly crucial evidence or the manner in which his attorney had supposedly misled the court. Instead, he claimed to have a "mountain of evidence of this unlawful collusion which he will present at the new trial, if granted." Shaw also claimed his attorney had subjected him to duress by "forc[ing] him to go along" and by telling Shaw that what the attorney was advising was "'the right thing' under the law"; but there again Shaw failed to even identify the specific advice the attorney gave, let alone demonstrate how that advice might not have been "'the right thing' under the law." Shaw then simply asserted he "lost his volition in response to [the attorney's] [c]ompulsion."

10

In support of his contention that the resulting judgment had been unfair, Shaw simply made reference to "community debts resulting from the Khaliq Judgment . . . [which] were not adjudicated at trial and must be adjudicated in the interest of justice." He asserted that his former wife "is obligated to pay 50%, or even more, of these debts and obligations because they arose long before the separation of the parties and some of the investment clients were [his former wife's.]" But he made no effort to identify specific evidence in the record which would support his conclusory characterization of the debts.

And while Shaw's motion was also supported by a declaration, that declaration was devoid of any separate factual content which might have been relied upon to support the factual conclusions stated in the points and authorities. Instead, the declaration merely identified Shaw as the respondent in the case, and expressed his willingness to testify if called upon to do so, "based on [his] personal knowledge, information and belief." The declaration then recited Shaw was "familiar with the foregoing facts in the motion," and respectfully requested that the motion be granted. To the extent that declaration was intended to transform the conclusory factual assertions set forth in Shaw's points and authorities into admissible evidence, it failed.

Significantly, the declaration does not even specifically claim the facts stated in the motion *are true*. It merely claims Shaw is familiar with them, and that if he were called upon to testify in the case, he would do so. That is insufficient. But even if we were to construe the declaration as attesting to the truthfulness of the facts set forth in the motion, it would still be deficient. To qualify as admissible evidence, "[d]eclarations must show the declarant's personal knowledge and competency to testify, *state facts and not just conclusions*, and not include inadmissible hearsay or opinion." (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761, italics added.) Moreover, a declaration stating facts based on "information and belief," which is what Shaw offered here, is generally inadmissible. (Evid. Code, § 702, subd. (a) ["the testimony of a

11

witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter"].) "[A]n affidavit is normally presumed to state matters personally known to the affiant and lacks evidentiary value, in a variety of civil contexts, when based on information and belief, or hearsay." (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 87.)

Because Shaw's declaration was ineffective as a means of transforming the conclusory factual assertions contained in his points and authorities into admissible evidence, those assertions amount to nothing other than an averment of his personal beliefs, based on his own interpretation of events occurring in the course of the litigation, and they do not constitute admissible evidence of any fact necessary to support his motion. The court, which was also a participant in the proceedings, was free to reject Shaw's impressions in favor of its own.

In any event, Shaw's claim of "economic duress" is legally insufficient. A claim of economic duress arises when the victim is subjected to "*a wrongful act* which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure. [Citations.] The assertion of a claim known to be false or a bad faith threat to breach a contract or to withhold a payment may constitute a wrongful act for purposes of the economic duress doctrine." (*Rich & Whillock, Inc. v. Ashton Development, Inc.* (1984) 157 Cal.App.3d 1154, 1158-1159, italics added.) Here, if we were to assume the truth of the facts stated by Shaw in his motion – as distinguished from Shaw's characterizations of the subjective intentions of others – they reflect only the financial burden which litigation commonly imposes on parties, and not any *wrongdoing* committed against Shaw by anyone.

Stripped of the conclusory rhetoric, Shaw appears to be claiming only that his own attorney advised him that if he did not abandon certain contentions, it "would mean starting the whole trial from the very beginning." And according to Shaw, he had no choice but to accept that advice because "he did not have the financial resources" to

12

do that.  But a party's lack of resources to fund further litigation is an appropriate factor to be considered in deciding whether to continue the fight, and does not qualify as a wrong committed against him.  Moreover, the fact Shaw's attorney had already filed a lien against his personal residence for unpaid fees cannot be viewed as supporting a claim of "duress," because such liens are specifically provided for by statute.  (Fam. Code, § 2033.)  Stated simply, Shaw's attorney was legally entitled to be paid for both the work he had already done in connection with the dissolution and whatever work he would be called on to do if the case proceeded further.  His candid explanation of that fact to Shaw was merely truthful, rather than wrongful or coercive.

Finally, even if we were to assume the advice given to Shaw by his attorney was poor (and to be clear, Shaw has made no effort to establish that it was), the most obvious explanation would be simple negligence, not an intentional desire to harm Shaw's interests.  Shaw does not even suggest why his counsel might have had a motive to harm him.  And as explained in *In re Marriage of Roseveare* (1998) 65 Cal.App.4th 673, 686, the negligence of a party's attorney does not provide a sufficient basis to set aside a dissolution judgment under Family Code section 2122:  "Carol's claim really boils down to an assertion that she failed to obtain an equitable division of property or support order because of the negligence of her attorneys. . . .  [E]ven though attorney negligence will not be imputed to a client to bar an order setting aside a judgment, such an order may still only be granted if it is based on one of the five exclusive grounds specifically set forth in [Family Code] section 2122.  Attorney negligence is not itself one of these enumerated grounds for setting aside a judgment.  The fact that attorney negligence is not a *bar* to setting aside a dissolution judgment does not transform it into a form of fraud, perjury, duress, mental incapacity, mistake, or other ground *for* setting aside a judgment."

Because Shaw's motion to set aside the judgment was both unsupported by admissible evidence and failed to assert a sufficient claim of "economic duress" to justify relief, we conclude the court did not err in denying it.

*3. Motion to Set Aside Sanctions Order*

Next, Shaw argues the court improperly denied his motion to set aside its order imposing monetary sanctions against him. Shaw's motion was based on Code of Civil Procedure section 473, which provides that a "court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." (*Id*., § 473, subdivision (b).)

Because Shaw appealed from the order denying his motion to set aside the sanctions order, and not from the sanctions order itself, we do not consider whether that order was proper in the first instance. The sole question before us is whether the trial court correctly determined that Shaw failed to demonstrate that the original sanctions order was taken against him through his "mistake, inadvertence, surprise, or neglect." (Code Civ. Pro., § 473, subd. (c)(2).) We conclude the court's ruling was correct.

First, as the trial court noted in its order, Shaw's claims of inadvertence and surprise were unsupported by any admissible evidence. Just as he did with his motion to vacate the judgment, Shaw supported his motion to set aside the sanctions order with only a non-substantive declaration claiming familiarity with the facts stated in the motion, based at least in part on his information and belief, and expressing a willingness to testify if called. As we have already explained, such a declaration is insufficient to transform the factual assertions contained in his motion into admissible evidence.

Second, and more significant, even if Shaw's factual assertions were treated as established, his motion would nonetheless fail because neither his claim of "surprise" nor his claim of "inadvertence" was sufficient to justify relief under the statute. Shaw

14

explained the order had been caused by inadvertence because he "inadvertently" failed to file his own cross-motion for sanctions against his former wife, after a court clerk advised him he could not do so until he filed an income and expense statement. He contended that if the court had heard both sanctions motions together, it would have imposed "heavy sanctions" against his former wife. But even if that were true, it does nothing to undermine the sanctions order issued *against Shaw*. The two sanctions requests, whether heard and considered by the court on the same or separate days, present distinct issues.

In any event, as Shaw otherwise acknowledges, the court did later impose sanctions against his former wife and ordered those sanctions be treated as an offset against these challenged sanctions. Thus, Shaw ultimately obtained the same practical result he could have expected to achieve if the motions had been heard together. And any suggestion the court might have imposed different amounts of sanctions simply because the motions were heard together is entirely speculative, and cannot be relied upon as a basis for overturning the ruling. (*Ajaxo Inc. v. E\*Trade Group, Inc.* (2005) 135 Cal.App.4th 21, 63 ["We may not reverse a judgment if the plaintiff's evidence 'raises nothing more than speculation, suspicion, or conjecture'"].) Shaw's claim that the sanctions order resulted from his "inadvertence" fails.

Shaw also asserted he was "surprised" by the court's decision to issue sanctions against him, because it was based on guidelines governing attorney conduct, and he is not an attorney, and because the "name-calling" he was accused of engaging in was truthful. But in making that assertion, Shaw confused the type of "surprise" which would justify relief under Code of Civil Procedure section 473 – i.e., surprise that *contributes to* the issuance of the challenged order – with surprise that *results from it*. If the court simply errs in its ruling, as Shaw contends occurred here, that statute affords no relief.

15

Because Shaw provided the court with neither admissible evidence, nor any justification for affording him relief from the sanctions order pursuant to Code of Civil Procedure section 473, we conclude it did not err in denying the motion.

*4. Motion for Sanctions Against Shaw's Former Wife*

Shaw's final challenge is to the order imposing $500 in sanctions against his former wife under Family Code section 271. His argument, contained entirely on page 66 of his brief, is cursory, at best. He simply argues that the amount is insufficient as compared to the $6,000 in sanctions the court imposed against him, and thus constituted a "pat on [her] back and sent a wrong signal."

But the amount of sanctions to be imposed against a party under Family Code section 271 is a matter committed to the trial court's broad discretion, and we will reverse such an order only if the appellant demonstrates, *in light of all the evidence*, that the award exceeded the bounds of reason: "Sanctions under section 271 are committed to the discretion of the trial court, and will be reversed on appeal only on a showing of abuse of that discretion, that is 'only if, considering all of the evidence viewed more favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order.'" (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1524.)

Here, Shaw has made no effort to address the evidence before the trial court in connection with the request for sanctions against his former wife, let alone to explain why that evidence could not have justified the comparatively small amount of sanctions imposed. Instead, Shaw simply reasserts the contention he relied upon at the trial court level, which is that his former wife intentionally flouted the court's order to pay the tax liens for nearly two years, and he ignores the court's specific determination that *he shared responsibility for most of that lengthy delay*. The trial court concluded, contrary to Shaw's contention, that his former wife had been solely responsible for only a small

16

part of the delay in paying off the liens.  Because Shaw failed to even address the court's stated rationale for its sanctions order, he necessarily failed to demonstrate the order constituted an abuse of the court's discretion.  The order is consequently affirmed.

DISPOSITION

The orders are affirmed.  Shaw is to bear his own costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

ARONSON, J.

IKOLA, J.