[No. B135155. Second Dist., Div. Three. Nov. 28, 2001.]

In re the Marriage of JENNESS BREWER and OVIDIO FEDERICI.
JENNESS BREWER, Appellant, v.
OVIDIO FEDERICI, Respondent.

**COUNSEL**

Marjorie G. Fuller; Soldwedel, Palermo, Barbaro & Chinen and Richard L. Chinen for Appellant.

Mary-Lynne Fisher, Honey Kessler Amado and Edward J. Horowitz for Respondent.

**OPINION**

**ALDRICH, J.—**

## INTRODUCTION

After 17 years of marriage, appellant Jenness Brewer (Brewer) and respondent Ovidio Federici (Federici) entered into a marital settlement agreement and stipulated to a judgment of dissolution based thereon. Subsequently, based upon mistake, Federici filed a motion to set aside the judgment and a motion to set aside the marital settlement agreement. Brewer appeals from the order granting the motions. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Preliminary facts.*

Brewer and Federici were married in 1980. Brewer was a vice-president at the National Broadcasting Company (NBC).[1] In 1997, Brewer earned approximately $175,000. Federici was an artist. He was not actively involved in his career. The family lived primarily on Brewer's salary. Federici managed the family household, including the family finances, the community checking account, and the bills. He had access to the parties' tax information. The parties had one daughter, born in 1981.

Brewer and Federici separated in 1997 after 17 years of marriage.

2. *The dissolution and settlement.*

On January 2, 1998, Brewer served Federici with a petition for dissolution of marriage and related documents.

The parties negotiated a marital settlement agreement. They agreed to a division of property as follows: Federici would receive his car, his personal property, specified furnishings, his investment accounts, his art collection, $5,000 in lieu of stock options, 20 shares of GE stock, and an equalizing payment of $149,000. He also was to receive $6,000 for relocation expenses. Brewer agreed to pay Federici $35,000 per year, for five years in tax-free, nonmodifiable spousal support, and to pay Federici's health and auto insurance for that period of time. Brewer was to receive a family trust and a medical malpractice claim. Additionally, she was to receive the family home, her car, her personal property, furnishings not otherwise designated, her investment accounts, her IRA (individual retirement account), and GE stock options. She was also to receive "[a]*ny and all right, title and interest in [her] retirement and pension plan, [her] Savings and Security program with an approximately total balance of $168,561.00, though her employer, NBC[.]"* (Italics added.) Brewer assumed all marital debts. There was to be joint legal custody of the child, and Brewer was to be the custodial parent. Brewer agreed to be solely responsible for the child's support.

There is no evidence that either spouse refused to provide documentation requested by the other spouse.

During the negotiations of the marital settlement agreement, Brewer was represented by counsel and Federici consulted an attorney on two occasions.

---

[1]NBC is owned by General Electric (GE).

On February 27, 1998, the parties met in Brewer's attorney's office. They signed the marital settlement agreement. At the time, the parties exchanged final declarations of disclosure, both dated January 17, 1998. All documents had been prepared by Brewer's attorney.

The two final declarations of disclosure were identical in content. They each included a schedule of assets and debts. The schedules had five columns, two of which were labeled "assets—description" and "current gross fair market value."[2] They provided a current gross value for the family residence at $475,000 and showed that $305,000 was owed. The following items were valued as "unknown": (1) miscellaneous household furniture, furnishings, and appliances; (2) miscellaneous jewelry, antiques, art, coin, collections; (3) a Brewer family trust; and (4) a medical malpractice action.

The two schedules of assets and debts further reflected the following:

| ASSETS - DESCRIPTION | CURRENT GROSS FAIR MARKET VALUE |
|---|---|
| 12. RETIREMENT AND PENSIONS<br>(Attach copy of latest summary plan documents and latest benefits statement.)<br><br>NBC PENSION | <br><br><br>UNKNOWN |
| 13. PROFIT-SHARING, ANNUITIES, IRAS, DEFERRED COMPENSATION<br>(Attach copy of latest statement.)<br><br>NBC SAVINGS & SECURITY PROGRAM<br>[BREWER'S] IRA<br>GE STOCK OPTIONS | <br><br><br>168,561.00<br>8,000.00<br>UNKNOWN |

A number of Federici's paintings were valued in another document at approximately $50,000.

Attached to Brewer's final declaration of disclosure were two pages of an annual statement supplied by her employer, NBC. It showed that as of December 31, 1996, the NBC Savings and Security Program had a value of $168,561.

---

[2]The other three columns were labeled "sep. prop.," "date acquired," and "amount of money owed or encumbrance."

At the time the final declarations of disclosure were signed, Federici believed Brewer had *one* pension plan and it had an approximate value of $170,000.[3]

Also on February 27, 1998, the parties signed a stipulated judgment. It contained a division of property, duplicating verbatim that which had been detailed in the marital settlement agreement. The stipulated judgment also had been prepared by Brewer's attorney.

On April 23, 1998, the stipulated judgment was entered.

3. *The motions to set aside.*

In December 1998, Federici moved to set aside the property division and spousal support portions of the judgment. In part, Federici contended the motion should be granted because substantial community assets were not valued, including Brewer's "NBC pension, [and] GE stock options." Federici declared he had been under a mistaken belief regarding the amount he could earn during the next few years while he was in school. He found that while in school he could only earn $6 per hour working parttime. He further declared that he would not have agreed to the spousal support provisions in the judgment or waived his community interest in Brewer's retirement benefits had he understood his limited earning potential. Federici also contended that Brewer's final declaration of disclosure was inadequate because the schedule of assets and debts had not valued substantial community assets, including Brewer's NBC pension.

An expert declaration was submitted on behalf of Federici. The expert declared that Brewer's interest in the NBC Pension was worth $278,784, assuming a date of separation of August 1, 1997, and was worth $286,144, assuming a December 17, 1997, date of separation.

The parties conducted discovery.

On February 18, 1999, Federici filed supplemental points and authorities. He pointed out that the judgment awarded Brewer her "retirement and pension plan, and [her] Savings and Security program with an approximate

---

[3]As stated in footnote 1, *ante,* NBC is owned by GE. Regardless of the labels used by the parties and the trial court in the proceedings below, it is clear that there were two pension plans: (1) the GE Pension plan, also referred to as the NBC Pension Plan; and (2) the Savings and Security Program, also referred to as the NBC Savings and Security Program, the GE Savings and Security Program, and the Savings and Security Plan. For ease of reference, hereinafter, we refer to these two pension plans as the "NBC Pension" and the "Savings and Security Program."

*total* balance of $168,561.00 . . . ." (Italics added.) Federici noted it had been learned through discovery that the value of the Savings and Security Program was not $168,561. That sum that had been ascertained from Brewer's December 1996 annual statement, which was more than a year before the January 1998 disclosure statements. Federici also noted that the 1996 annual statement had 13 pages, but Brewer had attached only two pages to her final declaration of disclosure. The omitted pages would have revealed other relevant information about the program, such as the amount Brewer was to receive upon retirement. Federici produced evidence revealing that Brewer's Savings and Security Program was worth $232,441 as of December 31, 1997, and $313,235 as of December 31, 1998. Additionally, Federici showed that the NBC Pension was worth at least $286,144. Federici stated that when he agreed to the property settlement, he had not understood that Brewer had *two* retirement plans through her employer. This mistake explained why he had accepted the global settlement, including the $149,000 equalization payment, and why the marriage settlement agreement and the stipulated judgment referred to a "total balance of $168,561" for the retirement plans.

On February 26, 1999, Federici filed a second motion. It was to set aside the marital settlement agreement. Federici contended, among other arguments, that there had been a mistake. Federici argued that "the parties were mistaken as to the value and possibly as to the number of [Brewer's] pension plans and that [Brewer] had failed to comply with the disclosure requirements as set forth in Family Code § 2105 and elucidated in Marriage of Varner (1997) 55 Cal.App.4th 128 [63 Cal.Rptr.2d 894] . . . by listing 'unknown' for the value of her [NBC] pension and GE stock options and by listing an outdated value for her . . . Savings and Security [Program]."

In opposing the motions, Brewer stated she did not understand how her retirement benefits worked and she had valued the NBC Pension as "unknown" because she had not known its value. Brewer also stated that she had not attempted to hide anything, as she acknowledged she had two retirement plans through her employer. Brewer admitted she had not tried to ascertain the value of the NBC Pension.

4. *The order setting aside the judgment and the marital settlement agreement.*

The trial court set aside the judgment and the marital settlement agreement, except as to marital status.

In its statement of decision, the trial court found the following: (1) Brewer contended the date of separation was August 1, 1997. Federici claimed the

date of separation was December 7, 1997; (2) The community interest in Brewer's NBC Pension, a defined pension plan, was worth between $286,144 and $278,784, depending upon the date of separation; and, (3) Brewer's Savings and Security Program was a defined contribution plan. As of December 31, 1996, it was worth $168,561, and was entirely community property. As of December 31, 1997, the Savings and Security Program was valued at $232,441, and as of December 31, 1998, it was valued at $313,235. The community interest in this asset after December 31, 1996, would depend upon how much was contributed by Brewer from her postseparation earnings.

In the statement of decision, the trial court further found the following:

". . . The Final Declarations of Disclosure of both parties, which were signed on January 17, 1998, listed the value of [Brewer's NBC] Pension Plan as 'unknown' and listed the value of [Brewer's] Savings and Security Program as $168,561.00. [Brewer] attached to her Final Declaration of Disclosure only those two pages of her 1996 annual benefits statement [showing] the value of her . . . Savings and Security Program as of December 31, 1996. [Brewer] did not attach the remaining pages of the benefits statement which provided an estimate of the monthly income [Brewer] would receive from her [NBC] Pension Plan upon retirement at a certain age, but did not include an actuarial value.

". . . The equalization payment awarded to [Federici] in the judgment was based upon [a] valuation of $168,561.00 [for the Savings and Security Program].

". . . The approximate total value of [Brewer's NBC] Pension . . . and . . . Savings and Security Program as of December 31, 1997, was $511,225.00 to $518,225.00, almost all of which is community property.[4]

". . . On the basis of the foregoing findings alone and without consideration of [Federici's] claims regarding the division of other community assets or the terms of the spousal support award, [Federici] has met the requirement of Family Code § 2121(b).

". . . The failure of [Brewer's] Final Declaration of Disclosure to state the value of the [NBC] Pension . . . or the current value of the . . . Savings & Security Program constituted a material omission. While the statement that the value of the asset was 'unknown' did not constitute perjury, the

---

4 $232,441 + $278,784 = $511,225.
$232,441 + $286,144 = $518,225.

omission of any value for the [NBC] Pension Plan constituted a breach of fiduciary duty imposed upon spouses by Family Code [§]§ 721 and 1101(e). The omission led to a mistake of fact regarding the value of what appear[s] to be the largest and second largest community assets. The parties entered into the marital settlement agreement and the judgment without full knowledge of the facts and as a result their decision and any waivers made as part of that decision cannot be said to be 'knowing.' Family Code § 2102 requires an accurate and complete disclosure of assets and liabilities. The parties' Final Declarations of Disclosure were neither accurate nor complete.

". . . The court . . . finds that pursuant to Family Code § 2122(e) and Marriage of Varner[, *supra*,] 55 Cal.App.4th 128, the judgment must be set aside in its entirety (except for the termination of marital status.) It would be both illogical and unlawful to hold either of the parties to an agreement where there was not full and complete disclosure or to allow either party to choose which portions of an agreement to set aside."

On July 7, 1999, the trial court ordered that the judgment and the marital settlement agreement, except as to status, be set aside. Brewer appealed.

## DISCUSSION

*The trial court did not abuse its discretion in setting aside the judgment and the marital settlement agreement based on mistake.*

Brewer contends the trial court abused its discretion in setting aside the judgment and the marital settlement agreement. This contention is unpersuasive.

1. *The lack of full and accurate disclosure may be grounds for a motion to set aside based upon mistake.*

Marriage creates a fiduciary relationship between spouses. (Fam. Code, §§ 721, subd. (b), 1100, subd. (e), 2102.) The confidential relationship between spouses "imposes a duty of the highest good faith and fair dealing on each spouse . . . ." (Fam. Code, § 721, subd. (b).) As part of these obligations, each spouse is required to provide the other spouse with access to all books regarding transactions for purposes of inspection and copying (Fam. Code, § 721, subd. (b)(1)), and rendering upon request "true and full information of all things affecting any transaction which concerns the community property." (Fam. Code, § 721, subd. (b)(2).) Additionally, spouses must make full and accurate disclosure and account for separate and community property. (Fam. Code, § 2100, subds. (b) & (c) [sound public policy

favors reducing adversarial nature of marital dissolution and attendant costs by fostering full disclosure and cooperative discovery[5]]; Fam. Code, § 2102 [requiring accurate and complete disclosures[6]]; Fam. Code, § 2103 [requiring both preliminary and final declarations of disclosure]; Fam. Code, § 2104 [requiring preliminary declaration of disclosure]; Fam. Code, § 2105, subd. (a) [requiring final declaration of disclosure].) The duty of disclosure "includes the obligation to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and *valuation* of all assets in which the community has or may have an interest . . . ." (Fam. Code, § 1100, subd. (e), italics added.)[7]

The parties also have "a continuing duty to update and augment that disclosure to the extent there have been any material changes so that at the time the parties enter into an agreement for the resolution of any of these issues, . . . each party will have as full and complete knowledge of the

[5]Family Code section 2100 reads in part:

"The Legislature finds and declares the following: [¶] . . . [¶]

"(b) Sound public policy further favors the reduction of the adversarial nature of marital dissolution and the attendant costs by fostering full disclosure and cooperative discovery.

"(c) In order to promote this public policy, a full and accurate disclosure of all assets and liabilities in which one or both parties have or may have an interest must be made in the early stages of a proceeding for dissolution of marriage or legal separation of the parties, regardless of the characterization as community or separate, together with a disclosure of all income and expenses of the parties. Moreover, each party has a continuing duty to update and augment that disclosure to the extent there have been any material changes so that at the time the parties enter into an agreement for the resolution of any of these issues, or at the time of trial on these issues, each party will have as full and complete knowledge of the relevant underlying facts as is reasonably possible under the circumstances of the case."

[6]Family Code section 2102 reads in part:

"From the date of separation to the date of the distribution of the community asset or liability in question, each party is subject to the standards provided in Section 721, as to all activities that affect the property and support rights of the other party, including, but not limited to, the following activities:

"(a) The accurate and complete disclosure of all assets and liabilities in which the party has or may have an interest or obligation and all current earnings, accumulations, and expenses.

"(b) The accurate and complete written disclosure of any investment opportunity that presents itself after the date of separation . . . .

"(c) The operation or management of a business or an interest in a business in which the community may have an interest."

[7]Family Code section 1100, subdivision (e) reads: "Each spouse shall act with respect to the other spouse in the management and control of the community assets and liabilities in accordance with the *general rules governing fiduciary relationships* which control the actions of persons having relationships of personal confidence as specified in Section 721, until such time as the assets and liabilities have been divided by the parties or by a court. *This duty includes the obligation to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets* in which the community has or may have an interest and debts for which the community is or may be liable, and to provide equal access to all information, records, and books that pertain to the value and character of those assets and debts, upon request." (Italics added.)

relevant underlying facts as is reasonably possible . . . ." (Fam. Code, § 2100, subd. (c).) The final declarations of disclosure must include, among other items, "[a]ll *material* facts and information regarding the *valuation* of all assets that are contended to be community property or in which it is contended the community has an interest." (Fam. Code, § 2105, subd. (b)(2), italics added.)[8]

These duties arise without reference to any wrongdoing. (*In re Stanifer* (Bankr. 9th Cir. 1999) 236 B.R. 709, 716-717; Fam. Code, § 2102.)

■ The formulation of a marital settlement agreement is not an ordinary business transaction, resulting from an arm's-length negotiation between adversaries. Rather, it is the result of negotiations between fiduciaries required to openly share information. (Fam. Code, §§ 721, subd. (b), 1100, subd. (e), 2100, subds. (b) & (c).)

■ "[A] trial court may not set aside a dissolution judgment on the *sole* grounds the judgment is inequitable or the support ordered is inadequate." (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 684, fn. 11 [76 Cal.Rptr.2d 691]; Fam. Code, § 2123.)

■ Motions to set aside judgments are governed by Family Code section 2122.[9] Under this statute, there are five exclusive grounds to set aside a judgment. "[A]ny action or motion to set aside such a judgment must be based on actual fraud, perjury, duress, mental incapacity, or mistake." (*In re Marriage of Rosevear, supra,* 65 Cal.App.4th at p. 684, fn. omitted.)

---

[8]Family Code section 2105, reads in part: "(a) [E]ach party . . . shall serve on the other party a final declaration of disclosure and a current income and expense declaration, executed under penalty of perjury . . . . [¶] (b) *The final declaration of disclosure shall include all of the following information:* [¶] (1) All material facts and information regarding the characterization of all assets and liabilities. [¶] (2) *All material facts and information regarding the valuation of all assets that are contended to be community property* or in which it is contended the community has an interest. [¶] (3) . . . [¶] (4) All material facts and information regarding the earnings, accumulations, and expenses of each party that have been set forth in the income and expense declaration. [¶] (c) The parties may stipulate to a mutual waiver of the requirements of subdivision (a) concerning the final declaration of disclosure . . . . [¶] . . . [¶] (e) In making an order setting aside a judgment for failure to comply with this section, the court may limit the set aside to those portions of the judgment materially affected by the nondisclosure." (Italics added.)

[9]Family Code section 2122 provides in part: "The grounds and time limits for a motion to set aside a judgment, or any part or parts thereof, are governed by this section and shall be one of the following: [¶] (a) Actual fraud . . . . [¶] (b) Perjury . . . . [¶] (c) Duress . . . . [¶] (d) Mental incapacity . . . . [¶] (e) As to stipulated or uncontested judgments or that part of a judgment stipulated to by the parties, *mistake, either mutual or unilateral, whether mistake of law or mistake of fact.* An action or motion based on mistake shall be brought within one year after the date of entry of judgment." (Italics added.)

To set aside a stipulated or uncontested judgment based upon mistake, the mistake may be "either mutual or unilateral, whether mistake of law or mistake of fact." (Fam. Code, § 2122, subd. (e).)

*In re Marriage of Varner, supra,* 55 Cal.App.4th 128, 144 (*Varner*), recently discussed setting aside a stipulated judgment based upon mistake. In *Varner,* the husband misrepresented the value of substantial assets. He prevented the wife and her advisers from having access to the information from which the assets could be valued. The trial court refused to set aside the judgment. The appellate court reversed, concluding the failure to disclose the existence or value of a community asset constituted grounds for setting aside the judgment on the grounds of mistake. (*Ibid.*; accord, *In re Marriage of Jones* (1998) 60 Cal.App.4th 685, 693 [70 Cal.Rptr.2d 542].)

Brewer asserts *Varner*'s holding should be limited to its facts, facts that would have been sufficient for findings of fraud and perjury. *Varner* should not be read so narrowly. *Varner*'s decision to set aside the settlement agreement was based solely upon an extreme undervaluation of important community assets. *Varner* held, "[w]e conclude that the failure of a spouse to disclose the existence or the value of a community asset, as occurred in the present case, constitutes a basis for setting aside a judgment on the grounds of mistake under section 2122." (*Varner, supra,* 55 Cal.App.4th at p. 144.)

Thus, spouses may be relieved of a stipulated judgment based upon incomplete or inaccurate information. (*Varner, supra,* 55 Cal.App.4th at p. 144; Fam. Code, § 1101 [claim for breach of fiduciary duty].)[10]

In addition to establishing mistake, the party seeking relief must also establish that "the facts alleged as the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief." (Fam. Code, § 2121, subd. (b).)

Brewer and Federici seem to agree that if the facts support setting aside the judgment, the marital settlement agreement must also be set aside. There were conflicting declarations as to the circumstances leading up to the

[10]In the prior statutory scheme, there was a distinction between "extrinsic" and "intrinsic" fraud. This distinction was crucial as only extrinsic fraud warranted setting aside a judgment. Under the prior statutory scheme valuing an asset favorable to oneself was not considered extrinsic fraud. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1144, fn. 7 [97 Cal.Rptr.2d 707].) The new statutory scheme abolishes the distinction between extrinsic and intrinsic fraud. (*Ibid.*)

In reaching its conclusion, *Varner* noted that "Under the stringent 'extrinsic mistake' standard that would have applied in the absence of the recent statutory changes, the facts before us might not have been sufficient to warrant a reversal by this court on abuse of discretion grounds." (*Varner, supra,* 55 Cal.App.4th at p. 144.)

settlement agreement and the judgment based thereon. ■ We review the trial court's decision in ruling on the motion to set aside the judgment and the motion to set aside the marital settlement agreement to determine if the trial court abused its discretion. (*In re Marriage of Rosevear, supra,* 65 Cal.App.4th at pp. 682-683; *Varner, supra,* 55 Cal.App.4th at p. 138.)

### 2. *Here there was a unilateral mistake by Federici warranting relief.*

■ Contrary to Brewer's contention, the trial court did not abuse its discretion in setting aside the judgment and the marital settlement agreement based upon mistake of fact. The evidence supports the trial court's determination that there was a unilateral mistake by Federici.[11] Federici did not have accurate and complete valuations of Brewer's pension plans. Such information was essential to his agreement to resolve all financial issues, including spousal support and the division of community property.

According to Federici, he agreed to the equalization payment based upon his belief that there was *one* pension plan with a *total* value of $168,561. Federici's understanding of the facts was reflected in the judgment and the marital settlement agreement. Both documents recited that Brewer was to receive "[a]ny and all right, title and interest in [her] retirement and pension *plan,* [her] Savings and Security program with an approximate *total* balance of $168,561.00, through her employer, NBC[.]" (Italics added.) In fact, however, there were *two* pension plans, with a total value of more than $500,000, almost all of which was community property.

The valuation information about the Savings and Security Program was neither current nor accurate. It was not worth $168,561, as had been represented by Brewer based upon the 1996 outdated employer annual statement. Rather, it had a value of $232,441 as of December 31, 1997. Further, the NBC Pension was worth between $286,144 and $278,784, depending upon the date of separation. Brewer never provided Federici with a valuation of this asset. Brewer's pension plans were the largest community assets; their values were material to resolving the issues between the parties. Therefore, Federici agreed to a resolution of the property issues based upon incomplete, inaccurate, and omitted information. As the parties conceded, the valuation of these assets materially affected the original outcome and Federici would materially benefit from the granting of the relief. (Fam. Code, § 2121, subd. (b).)

These facts support the trial court's decision to set aside the judgment and marital settlement agreement based upon mistake.

---

[11] Brewer states she did not mislead and she revealed all information known to her. In light of our conclusion, we need not discuss whether or not these facts could have led the trial court to conclude that there had been a mutual mistake.

Brewer contends there can be no mistake because she met her disclosure obligations by fully disclosing the *existence* of both pension plans, the information known to her, and information from which the assets could be valued. We disagree. First, the information provided to Federici led him to believe there was only one plan. Further, Brewer did not provide a complete and accurate valuation of the Savings and Security Program. It was undervalued by at least $63,000. She did not provide all 13 pages of the 1996 employer annual statement.[12]

Brewer further contends she met her disclosure obligations when she valued the NBC pension as "unknown." She asserts it is unreasonable to expect spouses to value all assets, as to do so requires them to expend considerable funds on experts. Brewer additionally contends that to impose a stringent valuation requirement will discourage the amicable distribution of assets.

By these arguments, Brewer fails to address the court's ability to grant relief based upon mistake, regardless of a finding of wrongdoing. (Fam. Code, § 2122, subd. (e).) Further, the Family Code presumes spouses will have sufficient, accurate information from which informed decisions can be made. It requires disclosure of "[a]ll material facts and information regarding the *valuation* of all assets that are contended to be community property . . . ." (Fam. Code, § 2105, subd. (a)(2), italics added.) Here, the parties are not dealing with items that have intangible or sentimental value. They are not dealing with items that spouses frequently divide without regard to value, such as household furniture. They are not dealing with items the valuation of which are immaterial to a distribution agreement. They are not dealing with items where the expense of valuation is unwarranted or valuation will discourage the amicable distribution of assets. Rather, the NBC Pension is one of the largest community assets, an asset which is financial in nature and whose monetary value is easily ascertainable. Thus, when Brewer stated the value of the NBC Pension was "unknown," she did not make sufficient disclosure.

Brewer asserts there was no "mistake" because Federici neglected *his* legal duty to value the pension plans. In making this assertion, Brewer relies upon the Civil Code that states that a mistake of fact cannot be "caused by the neglect of a legal duty on the part of the person making the mistake . . . ." (Civ. Code, § 1577; see also, Civ. Code, §§ 1567, 1576, 1578;

---

[12]As noted, Brewer supplied only two of the 13 pages of the 1996 employer annual statement. Federici argues this omission was purposeful and constitutes a misrepresentation. The trial court did not base its decision upon misrepresentation and we need not address the issue.

*Hernandez v. Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791, 1813, fn. 18 [34 Cal.Rptr.2d 732].) According to Brewer, she never refused to provide documentation requested by Federici, but rather provided the information known to her, i.e. that one plan had an "unknown" value and the other was worth $168,561. Brewer argues that once she came forward with information, Federici had an obligation to search for additional information. In making this argument, Brewer notes that had Federici been dissatisfied with the disclosed information, he could have requested a declaration of disclosure with further particularity. (Fam. Code, § 2107.)

Brewer's argument overlooks the fact that the Family Code imposes fiduciary obligations on both parties. One obligation is to make full, accurate, and complete disclosure, including the continuing duty to update and augment information. (Fam. Code, §§ 1100, subd. (e), 2100, subd. (c), 2102; *Rubenstein v. Rubenstein, supra,* 81 Cal.App.4th at pp. 1150-1151.) It reasonably follows that a spouse who is in a superior position to obtain records or information from which an asset can be valued and can reasonably do so must acquire and disclose such information to the other spouse. (Compare with *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1673-1674 [53 Cal.Rptr.2d 515] [discussing unilateral mistakes in arm's-length transactions].)

The two pension plans were the major community assets and were grossly undervalued by Brewer. Even if Brewer did not intentionally mislead Federici, she was in a superior position to gain access to the information from which valuations for these assets could be determined. The two pension plans were financial assets whose monetary values were easily ascertainable. There was no evidence suggesting it would have been unreasonable for Brewer to obtain current and accurate valuation information about the pension plans, both of which came from her employer. Federici was entitled to rely upon the information provided to him. (*Rubenstein v. Rubenstein, supra,* 81 Cal.App.4th at pp. 1150-1151.)

Brewer notes that in his original motion, Federici identified the "mistake" as a misunderstanding with regard to his earning capacity. Brewer then argues that this identified "mistake" had nothing to do with the valuation of the pension plans. Brewer slices the arguments too thin and ignores Federici's pleadings, especially his supplemental pleadings and his second motion in which he clearly argued mistake based upon the valuation of Brewer's pension plans. Further, the value of the pension plans and Federici's earning potential were all part of Federici's settlement decision. As the trial court noted when this argument was raised, "The mistake is real simple. [Federici] wouldn't have given [Brewer] $130,000 of [his] money knowing that [he

had] to go to the school for the next five years, graduate college at the age of 58, and start looking for a job." The settlement agreement was global and the issues were intertwined. (*Resnik v. Superior Court* (1986) 185 Cal.App.3d 634, 637-638 [230 Cal.Rptr. 1]; cf. *In re Marriage of Jones* (1987) 195 Cal.App.3d 1097, 1103, fn. 10 [241 Cal.Rptr. 231].)

■ By our discussion we do not mean to suggest that Federici and Brewer lacked the ability to decide upon an unequal distribution of assets. (Fam. Code, § 2550; Cal. Rules of Court, rule 1242; *In re Marriage of Cream* (1993) 13 Cal.App.4th 81, 87, 91 [16 Cal.Rptr.2d 575].) As long as such agreement is based upon a complete and accurate understanding of the existence and value of community and separate assets that are material to the agreement, the parties are free to decide on an unequal distribution.

The trial court did not err in setting aside the judgment and the marital settlement agreement based upon mistake.

DISPOSITION

The order is affirmed. Costs on appeal are awarded to Federici.

Croskey, Acting P. J., and Kitching, J., concurred.