Filed 9/4/25  Marriage of Giller CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION FOUR

| | |
|---|---|
| In re the Marriage of PATRICIA GILLER and RICHARD C. GILLER. | B339223 (Los Angeles County  Super. Ct. No.  19TRFL00474) |
| PATRICIA GILLER,       Petitioner and Respondent.    v. RICHARD C. GILLER,       Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gia G. Bosley, Judge.  Affirmed.

Richard C. Giller, in pro. per.; Law Offices of Romi Ben-Elyaho and Romi Ben-Elyaho for Appellant.  [Retained.]

Law Office of Roberta L. Murawski and Roberta L. Murawski for Respondent.

In March of 2023, Richard and Patricia Giller[1] entered into a stipulated judgment resolving their divorce proceedings. Six months later, Richard filed a request for order (RFO) seeking to set aside the stipulated judgment and an earlier default entered against him. He argued that he signed the stipulated judgment under duress and due to mental incapacity, as evidenced by its unconscionable terms. He also asserted that Patricia made false statements in her financial disclosures and failed to provide the required documentation. The trial court denied the RFO, finding that Richard, an attorney, did not meet his burden to demonstrate sufficient grounds to set aside the judgment.

On appeal, Richard challenges the trial court's order on multiple grounds. He contends the trial court prejudicially failed to consider his reply brief and supporting materials before ruling on the RFO. He does not challenge the court's findings regarding his claims of duress or mental incapacity. Instead, he focuses on his contention that Patricia violated her fiduciary duties by failing to provide certain financial disclosures and that she committed perjury and fraud. He contends that this conduct materially affected the judgment and requires it to be set aside. We find no error and affirm.

## BACKGROUND

### I. *Dissolution and Judgment*

Richard and Patricia were married in 2009. Patricia filed a petition for dissolution of marriage in propria persona on April 19, 2019. Regarding division of property, child custody, spousal and child support,[2] and attorney fees, the petition stated that the "parties have voluntarily agreed upon and entered into a Postnuptial Agreement detailing and resolving these issues."

Richard did not file a response to the petition, so Patricia filed a request to enter default in February 2020. She checked the boxes indicating that she had not attached an income and expenses declaration or financial

---

[1]      We refer to the parties by first name for clarity.

[2]      Both parties have children from other relationships, but no children together. Patricia's youngest child was a minor in 2019 and lived with her and Richard.

2

statement because the "issues subject to disposition by the court in this proceeding are the subject of a written agreement," and "there are no issues of child, spousal, or partner support or attorney fees and costs subject to determination by the court." The court entered default on February 28, 2020.[3]

Patricia retained counsel in early 2023. On March 15, 2023, through counsel, Patricia filed a form declaration regarding service of disclosures (FL-141). On the form, she checked the boxes indicating that she served Richard by mail on March 2, 2023 with her preliminary declaration of disclosure (FL-140), current income and expense declaration (FL-150), completed schedule of assets and debts (FL-142), all tax returns for the past two years, and all other required information under Family Code, section 2104.[4] She also checked the boxes indicating that it was a default proceeding and waiving the parties' final disclosure requirements under section 2110.

On the same day, Patricia also filed a declaration for default or uncontested dissolution. She checked the boxes indicating that the parties agreed that the matter could proceed as a default and that they had entered into a written agreement regarding their property and marriage rights, to be submitted to the court for approval.

Patricia filed a proposed judgment of dissolution on April 25, 2023, stating that the provisions of the judgment were reflected in the parties' stipulated judgment. In the attached stipulated judgment, signed by Patricia and Richard on March 10, 2023, the parties agreed that its terms would replace the 2019 postnuptial agreement. In the judgment, Richard agreed to pay Patricia half of his "net take home pay" as spousal support, with

---

[3]     The postnuptial agreement is not in the record. Patricia filed an RFO in August 2022 (she later claimed that Richard filed it under her name), seeking to lodge a copy of the postnuptial agreement under seal or to file a redacted version. The court rejected this request at a hearing in October 13, 2022, at which both parties appeared in propria persona, and ordered the parties to file preliminary declarations of disclosure.

[4]     All undesignated statutory references are to the Family Code.

delineated exceptions, until either party's death, Patricia's remarriage, or February 2030. Richard waived the right to all spousal support from Patricia, and she waived the right to any support after February 2030. Both parties initialed this section indicating that they "have carefully bargained for this buy-out and waiver of spousal support" and "understand the legal consequences of this waiver, and they have voluntarily entered into this waiver with full knowledge and understanding." The judgment also stated that Patricia's "earnings are $0 for the purpose of spousal support."

Richard also agreed in the judgment to maintain several life insurance policies for the remainder of his life, with Patricia as sole or partial beneficiary. The parties agreed that Richard would make certain payments toward expenses for three of Patricia's adult children, including health insurance, car payments, and college education. The judgment detailed the parties' agreement to division of property and assumption of debts and obligations. The parties also agreed that they had been "filing separate tax returns since 2019. Due to [Richard's] tax issues, the authorities have been withholding [Patricia's] tax refunds to pay down [Richard's] tax debt." Richard agreed to reimburse Patricia for any withheld tax refunds, and also to assume full responsibility for any tax liability for the joint tax returns filed during the marriage. The court entered the judgment on April 25, 2023.

## II. Richard's RFO

### A. RFO

Six months later, in October 2023, Richard, now represented by counsel, filed an RFO seeking to set aside the judgment and default. He also requested $8,000 in attorney fees and costs as well as sanctions against Patricia.

Richard sought relief pursuant to sections 2121 and 2122, as well as Code of Civil Procedure, section 473, asking the court to set aside the judgment and his default, so that he could "participate in his dissolution." He argued that relief was warranted because "(a) [Richard] suffers from depression which had gotten worse at the time the Judgment was signed; (b) [Richard] was under significant duress/mental incapacity at the time the

4

Judgment was signed; (c) [Patricia] failed to comply with the disclosure requirements; and (d) [Patricia] committed perjury and engaged in fraud against me and on the court."

Regarding his contentions of duress and mental incapacity, Richard explained that both his father and his sister had committed suicide, causing a lifelong struggle with "anxiety over being abandoned" and a fear of dying alone, which Patricia took advantage of. He stated that Patricia engaged in emotional abuse during the last few years of their marriage, harassing and threatening him and causing him "to become physically ill." He claimed that Patricia demanded that he "sign a highly unconscionable Post-Nuptial Agreement," awarding her "80% of his income for life," and that he did so under "extreme duress." Subsequently, he agreed to the stipulated judgment (giving Patricia 50 percent of his income until 2030) because Patricia threatened to seek 80 percent of his income if he did not. Richard stated that the amount of spousal support provided was "egregious" and he would not have signed the judgment if Patricia "had not strong-armed him into signing it." He claimed that during the marriage, he "spent almost every penny he earned in response to [Patricia's] demand," and "essentially had no savings."

Richard also claimed that relief was warranted because Patricia made fraudulent statements on her disclosures, including reporting her income as $0 when her yearly salary was "in excess of $130,000." He argued that Patricia failed to provide her tax returns and other supporting documents in violation of the disclosure requirements, and lied about it by stating on her disclosure forms that she had served him with those documents. He claimed that Patricia never provided her tax returns after 2019, as they filed separately after that date. He also claimed that Patricia listed inaccurate expenses on her income and expense declaration.

Richard attached Patricia's income and expense declaration, dated February 20, 2023, and listing her monthly income as a medical patient care coordinator as $4,352 and Richard's monthly income as $74,250. The declaration attached three of Patricia's pay stubs. Richard also included

Patricia's schedule of assets and debts signed March 2, 2023, with an attached page from her employee retirement account.

### B.    Patricia's Response

Patricia filed an opposition to the RFO in May 2024, requesting over $24,000 in attorney fees and sanctions against Richard for filing a "frivolous" motion.  She denied Richard's claims of duress and abuse, contending that he "was the one who prepared each and every draft of the post-marital agreements he now complains about."  She explained that Richard's "extended mishandling of our taxes during the marriage . . . caused us to owe approximately $500,000 in back income taxes," which she discovered in March 2019.  She claimed that Richard drafted the original version of the postnuptial agreement around early 2019, after she discovered his extramarital affairs.  Because of Richard's affairs and the tax liabilities, the parties agreed to file a divorce petition in 2019 but to also continue their attempts to reconcile.  Patricia contended that Richard prepared and filed the dissolution pleadings on Patricia's behalf, including the request to enter his own default.  She attached as exhibits copies of text messages and emails from Richard enclosing his draft documents for her signature and discussing his management of the divorce proceedings.  He also discouraged her from hiring a lawyer to finalize the dissolution, stating that having him complete the paperwork was "easier, more efficient, and cheaper than hiring a lawyer." Patricia also stated that Richard negotiated the terms of the stipulated judgment, which was significantly more favorable to him than the postnuptial agreement, and denied that she ever claimed she was entitled to 80 percent of his income.  She challenged Richard's claim of mental incapacity, noting that he was a partner and the head of a practice group at a law firm.

In response to Richard's fraud claims, Patricia noted that the parties had agreed that her income would be considered to be $0 for the purpose of spousal support, as reflected in the language of the stipulated judgment, and that Richard knew her actual income at the time, as reflected in her income and expense declaration.  Regarding perjury, she argued that her statement

6

that Richard "has copies of our tax returns" was not false, as it meant that Richard "already had ready access to copies of the parties' respective tax returns, whether jointly or separately filed, at the time the disclosure statement was made." She noted that after these disclosures, Richard proceeded by default and stipulated judgment, then waited six months to seek to set them aside. She also noted that Richard's claim that her expenses were "inflated and inaccurate" was without explanation or evidence, and that Richard had known about and accepted her expense disclosures at the time he agreed to the stipulated judgment.

Regarding her purported failures to disclose, Patricia did not dispute that certain documents were not attached to her forms. But she argued that the failure to attach supporting documents did not per se render the disclosures invalid, and that because the parties were proceeding based on an agreed-upon default, Richard did not request further disclosures or provide any disclosures of his own. Richard also "took the lead in helping [Patricia] prepare her disclosures."

### C.   Reply

In his May 8, 2024 reply, Richard repeated his arguments regarding fraud, perjury, duress, and mental incapacity. He stated that Patricia "forced [Richard] to draft and sign the postnuptial agreement after the infidelity came to light," and he did so "under extreme duress." He reiterated that he spent all of his money on Patricia and her children and as a result had no financial savings, nothing in a retirement account, and did not own any real property.

### D.   Hearing and Order

At the hearing on May 15, 2024, the court asked whether the parties were requesting an evidentiary hearing. Although both Patricia and Richard were present, counsel for both parties agreed to move forward on the papers, without presenting testimony.

Proceeding to argument, the court indicated its tentative ruling was to deny the RFO, finding that it lacked sufficient evidence of duress, mental incapacity, or undue influence based on the evidence submitted. Richard's

7

counsel argued that the stipulated judgment was "extremely onerous," noting that Richard had to pay 50 percent of his income, maintain a life insurance policy for life, and pay support for Patricia's adult children. The court responded, "I don't believe that the terms are unconscionable on their face. I understand that there is a requirement that [Richard] provide 50 percent of his income, but it is for a limited period of time. And . . . because it is a marriage of long duration, the court would have to weigh and determine how long a period it might be appropriate for [Patricia] to have support. . . . Likewise, the court has seen cases where parties bargain for things that they are not really legally required to do," such as paying for the education of adult children.

Richard's counsel argued that given the total amount of payments under the judgment, he would be left with "almost nothing to live off of." The court replied that it did not "have any information from [Richard] regarding his financial situation or his assets. So the court would not be able to make a determination, which is why I asked the parties before we got started whether or not there would be a request for an evidentiary hearing. I am simply saying on the face of the document itself, the court would not find it to be unconscionable." Richard's counsel pointed to his testimony in his declaration that he had no assets and no retirement and that Patricia "took everything." The court asked "[w]here in [Richard's] declaration does it indicate what his current assets are?" Richard's counsel cited the reply declaration and then, when the court could not locate the information, provided a copy. The court stated, "I am looking at the declaration. [Richard] is representing that that is his current income, correct? Or his current financial situation?" Richard's counsel reiterated that he had no real property, little savings, and no retirement. The court responded, "I am struggling. I understand you are saying it is unconscionable, but I am also aware that [Richard] may or may not be highly educated. Assuming that he went to law school, he has a certain level of sophistication. And so my concern, I don't know what his financial situation was at the time that the agreement was entered into, . . . but I am struggling with the fact that if that

were his situation at the time, where he did not have the resources to pay what was in the terms of the agreement, I am struggling with that."

The court also noted that it had "no evidence" of mental incapacity. Richard's counsel mentioned "survivor's guilt," and the court responded that it "may require expert testimony, which gets us back to my proposal that there might need to be an evidentiary hearing. . . . [J]ust the fact that he may have sought assistance for any type of mental health issues, in and of itself would not show the court that there was any degree of mental incapacity or duress. So I would need more information. On the information that I have, I am having a hard time. I don't know that I have sufficient evidence to make the findings that you are requesting that I make." The court said it would "need more information" about Richard's claim of survivor's guilt and incapacity, "in terms of how it may have impacted him, such that you believe that he lacked capacity, despite his background, training and experience[,] to enter into a reasonable agreement." The court offered Richard the opportunity to "present additional information" if he wanted. Patricia's counsel noted that Patricia sought to continue the matter because of outstanding discovery, including into the mental illness claim, but Richard had opposed that request. Patricia's counsel also noted that Richard was a partner of a law firm "representing Fortune 500 companies." The court then recessed for the noon break and the matter was continued to the afternoon. The afternoon session was not reported.

According to the court's minute order, the parties continued arguments during the afternoon session and the court then denied Richard's RFO. The minute order states, "The Court does not have sufficient evidence regarding a basis to set aside the judgment. The Court does not have sufficient evidence that [Richard] was under duress. The Court does not have sufficient evidence and does not make a finding that perjury was committed. Lastly, the Court does not have sufficient evidence regarding [Richard's] mental incapacity." The court continued the issue of attorney fees and sanctions.

Richard timely appealed.

9

**DISCUSSION**

Despite principally focusing on his claims of duress and mental incapacity below, Richard does not challenge the court's findings on those issues on appeal.  Instead, he contends that the court prejudicially failed to consider his reply papers and supporting evidence.  He also focuses on his claims that Patricia did not comply with her mandatory duties of disclosure and consequently committed fraud and perjury by averring compliance.  We find that he has not met his burden to establish error on any basis.

I.    **Legal Principles**

A.    **Motion to set aside judgment**

As explained in section 2120, "California has a strong policy of ensuring the division of community and quasi-community property in the dissolution of a marriage . . . , and of providing for fair and sufficient child and spousal support awards.  These policy goals can only be implemented with full disclosure of community, quasi-community, and separate assets, liabilities, income, and expenses, . . . and decisions freely and knowingly made. . . .  [¶] It occasionally happens that the division of property or the award of support, . . . is inequitable when made due to the nondisclosure or other misconduct of one of the parties."  (§ 2120, subds. (a), (b).)  In those instances, "[t]he public policy of assuring finality of judgments must be balanced against the public interest in ensuring proper division of marital property, in ensuring sufficient support awards, and in deterring misconduct."  (§ 2120, subd. (c).)

In furtherance of these goals, section 2121 provides that in dissolution proceedings, "the court may, on any terms that may be just, relieve a spouse from a judgment, or any part or parts thereof, adjudicating support or division of property."  (§ 2121, subd. (a).)  A motion to set aside the judgment must be based on the grounds set forth in section 2122, including, as relevant here, "[a]ctual fraud where the defrauded party was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding"; "perjury in the preliminary or final declaration of disclosure, the waiver of the final declaration of disclosure, or in the current income and

expense statement"; duress; mental incapacity; or "[f]ailure to comply with the disclosure requirements" of section 2100 et seq. (§ 2122, subdivisions (a)-(d), (f).)

Before granting a motion to set aside the judgment, the court "shall find that the facts alleged as the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief." (§ 2121, subd. (b).) As the party seeking to set aside the judgment, Richard bears the burden of proving the existence of at least one of the grounds for relief specified in section 2122 and the materiality of the alleged facts pursuant to section 2121. (*In re Marriage of Kieturakis* (2006) 138 Cal.App.4th 56, 89–90 (*Kieturakis*).)

"[T]he fact the judgment may have been inequitable to the moving party cannot by itself serve as a basis for setting aside that judgment. As stated by section 2123: 'Notwithstanding any other provision of this chapter, or any other law, a judgment may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the division of assets or liabilities to become inequitable, or the support to become inadequate.'" (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 684 (*Rosevear*).)

## B.    Standard of Review

We review a trial court's ruling on a motion to set aside the judgment under section 2122 for an abuse of discretion. (See *Rosevear, supra,* 65 Cal.App.4th at p. 682.) "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'" (*Ibid.,* quoting *Walker v. Superior Court* (1991) 53 Cal.3d 257, 272.) "[T]he showing on appeal is wholly insufficient if it presents a state of facts . . . which . . . merely affords an opportunity for a difference of opinion." (*In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 138 (*Varner*), superseded by statute on other grounds as noted in *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1144, fn. 7.)

11

We reject Richard's contention that he raised issues of statutory interpretation and public policy requiring de novo review. He has identified no such issues.

## II.    Analysis

### A.    Consideration of RFO Reply

Richard contends that comments made by the court during the hearing made it "clear that the Trial Court never read or considered any of [his] reply filings in support of his 2023 RFO." We disagree. Moreover, even if he had established such a failure, he has not demonstrated any error was prejudicial.

Richard argues that the court's statements during the hearing that it did not have information about his financial situation and subsequent comments made it "abundantly clear" that the court had not seen his reply declaration prior to the hearing. Contrary to Richard's assertion, the discussion between Richard's counsel and the court in the morning session of the hearing did not establish that the court "never read or considered" his reply brief or supporting evidence prior to denying his motion to set aside the judgment. The parties filed hundreds of pages in connection with the RFO. The court's comments during the discussion of Richard's financial situation suggested that it was possibly confused about which of the documents Richard's counsel was citing. The court did not state that it had not seen the reply papers. Moreover, even if the court had not reviewed Richard's reply prior to the hearing, it did so when Richard's counsel provided a copy of Richard's declaration during argument. Richard's counsel also detailed the portions she contended were relevant regarding his finances.[5]

Additionally, we can draw no conclusions about the hearing as a whole based on a partial transcript. We have no evidence of what was discussed

---

[5]    Richard points to the fact that the court did not list the reply papers in the minute order as one of the documents it "read and considered." Given the court's express consideration, at least briefly, of the reply declaration during the hearing, we reject Richard's contention that the minute order is conclusive evidence that the court never considered his reply.

during the afternoon session, prior to the court issuing its ruling. There is also nothing in the record to foreclose the possibility that the court reviewed any papers it had not previously reviewed during the lunch break, or after the hearing.[6]

It is the appellant's burden to provide an adequate record to the reviewing court to establish error. (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348; *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 (*Gee*).) An appellant's failure to provide an adequate record for appellate review requires the reviewing court to resolve the issue against the appellant. (*Gee, supra*, 99 Cal.App.4th at p. 1416; see also *Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1412 ["We cannot presume error from an incomplete record."].) "[I]t is appellant's burden to provide a reporter's transcript if 'an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court.'" (*Sanowicz v. Bacal* (2015) 234 Cal.App.4th 1027, 1034, fn. 5, citing Cal. Rules of Court, rule 8.120(b).)

Richard has not established on the record before us that the court failed to read or consider his reply papers prior to ruling on his RFO. Moreover, he has not demonstrated how any such failure would be prejudicial. Richard points to his statements in his reply declaration regarding his limited assets. But he also presented evidence on this issue in his moving papers, thus the court's alleged unfamiliarity with his reply would not have affected its ruling. Further, Richard has not claimed any error on appeal related to his finances. He argued below that his financial situation left him more vulnerable to abuse and manipulation by Patricia and also demonstrated the unconscionability of the postnuptial agreement and stipulated judgment. But

---

[6]     Of course, Richard's suggestion in his appellate brief that the court's facial expression when receiving the copy of the reply at the hearing demonstrated that it had "obviously" never "seen or analyzed" the document before is not evidence. Richard's counsel made no statements at the hearing, at least in the partial transcript before us, suggesting that the court had never seen the reply.

Richard has not raised these arguments on appeal. Thus, even if the court erred, Richard has not demonstrated the error was prejudicial.

## B.     Claimed Errors Regarding Disclosures

Richard argues that trial court erred in rejecting the undisputed evidence showing that Patricia failed to include all necessary documents with her financial disclosures and lied under oath about that failure. He further contends that this conduct violated Patricia's fiduciary duties and required the trial court to set aside the judgment. We disagree on all points.

As an initial matter, we find Richard's criticism of the trial court's ruling, as reflected in its minute order, to be meritless and unprofessional. Richard complains that the court's minute order was "woefully inadequate" and its substantive ruling included "just sixty-four (64) words" and no findings of fact or supporting authority. The court was not required to issue a statement of decision with findings of fact in ruling on the RFO because Richard did not request one. Under section 2127, "if a timely request is made, the court shall render a statement of decision where the court has resolved controverted factual evidence" on a motion for relief from judgment under section 2122.[7]

Moreover, Richard cannot challenge the extent of the court's findings or reasoning where there is no transcript or settled statement for the second half of the hearing. Because Richard did not request a statement of decision or provide a record of any oral findings, he "waive[d] any objection to the trial court's failure to make all findings necessary to support its decision." (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970

---

[7]     Similarly, Code of Civil Procedure section 632 states, in part: "In superior courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial." For proceedings concluded in less than one calendar day, the statement of decision does not need to be in writing but "may be made orally on the record in the presence of the parties." (§ 632.)

(*Acquire*); accord, *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 996.)  Further, we apply "the doctrine of implied findings and presume[ ] the trial court made all necessary findings supported by substantial evidence."  (*Acquire, supra,* 213 Cal.App.4th at p. 970; *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 167; *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 293.)

We next turn to Richard's contention that Patricia violated her statutory duties in providing her financial information during the dissolution proceedings.  "Marriage creates a fiduciary relationship between spouses." (*Brewer v. Federici* (2001) 93 Cal.App.4th 1334, 1342 (*Brewer*), citing §§ 721, subd. (b), 1100, subd. (e), 2102.)  "The confidential relationship between spouses 'imposes a duty of the highest good faith and fair dealing,'" including the obligation for each spouse to "make full and accurate disclosure and account for separate and community property."  (*Brewer, supra*, 93 Cal.App.4th at p. 1342, citing §§ 2100, subds. (b) & (c), 2102-2105.)  The duty of disclosure "includes the obligation to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest."  (§ 1100, subd. (e).)  To implement the disclosure obligation, the parties must serve a preliminary and final declaration of disclosure "[i]n order to provide full and accurate disclosure of all assets and liabilities in which one or both parties may have an interest."  (§ 2103.)

Richard contends that Patricia failed to include copies of her tax returns along with her preliminary disclosure, as required by section 2104 [preliminary declaration of disclosure "shall include all tax returns filed by the declarant within the two years prior"].)  He further contends that by failing to provide the tax returns but checking the box stating that she had done so, she committed perjury.[8]

---

[8]      We note that to the extent Richard claims Patricia failed to meet the requirements of a final declaration of disclosure under section 2105, Patricia waived those requirements for both parties when entering default.  (§ 2110

It is undisputed that Patricia did not provide a copy of her tax returns with her preliminary declaration of disclosure or all of the supporting documentation related to her assets, income, and liabilities, such as bank statements or a full two months of pay stubs.  However, there was a factual dispute as to Richard's claim of perjury. In her declaration of disclosure, Patricia checked the box stating that she had attached her tax returns for the past two years, but wrote in, "[Richard] has copies of our tax returns."  She then explained in response to the RFO that she meant that Richard had "access to" all of the tax returns.  Thus, the evidence was disputed as to whether Richard could access the returns—Patricia stated in her declaration that he could and had prepared their joint returns until 2019, while Richard stated that he did not have Patricia's returns once she began filing separately.  Given Patricia's explanation, which the trial court could have found credible, coupled with the evidence that at the time the parties were proceeding by default, apparently at Richard's suggestion, continued to live together, and that Richard helped prepare Patricia's disclosures, we find no error in the trial court's conclusion that there was insufficient evidence to establish perjury.

We also disagree with Richard's contention that the trial court was "required" to grant his RFO if it found Patricia had violated her disclosure obligations.  Section 2104, subdivision (a) provides, for example, that the "commission of perjury on the preliminary declaration of disclosure *may* be grounds for setting aside the judgment." (Italics added.)  None of the authority Richard cites supports his assertion of mandatory set-aside; indeed, the cases highlight the court's exercise of discretion in determining whether to set aside the judgment. (See, e.g., *Varner, supra*, 55 Cal.App.4th at p.138.)

We are not persuaded by the cases cited by Richard, as they are factually distinguishable.  In *Varner, supra*, 55 Cal.App.4th at p.143, the wife moved to set aside a stipulated judgment, contending that the husband failed

["In the case of a default judgment, the petitioner may waive the final declaration of disclosure requirements provided in this chapter."].)

16

to disclose the true value of the community property assets.  The wife "supported her argument by submitting valuations of the property prepared by her experts, and even by husband's experts, and comparing them to husband's testimony at trial regarding the value of the community property." (*Ibid*.)  She also provided loan applications submitted by the husband reflecting "dramatically higher values given to the properties . . . than were testified to by husband at trial." (*Ibid*.)  The wife also presented evidence that the husband had refused to provide the wife's accountant with necessary documents to determine the value of the community property.  (*Ibid*.)  The Court of Appeal found that the trial court abused its discretion in declining to set aside the judgment, as "the failure of a spouse to disclose the existence or the value of a community asset, as occurred in the present case, constitutes a basis for setting aside a judgment" under section 2122.  (*Id*. at p. 144.) Similarly, in *Brewer, supra,* 93 Cal.App.4th at p. 1346, the court set aside the judgment based on the wife's failure to disclose the value of her pension plan. The wife listed the value of the plan as "unknown" on her disclosures; it was later determined to be worth over $200,000.  (*Id*. at p. 1340.)  The trial court found that the omission was material and that the parties had relied on the inaccurate valuation in determining their division of property.  (*Id*. at p. 1342.)  The Court of Appeal agreed, concluding that the set-aside was warranted as a mistake of fact.[9]  (*Id*. at p. 1346.)

Here, by contrast, there was evidence that Richard, a seasoned attorney, controlled much of the dissolution proceedings on Patricia's behalf, including preparing the postnuptial agreement, the request to enter default, and Patricia's disclosures.  He had previously prepared the couple's taxes and they continued to live together until at least August 2022.  In addition, Richard submitted no evidence that Patricia failed to disclose the existence or value of material assets.  Under these circumstances, we find no abuse of

---

[9]     We note that both *Brewer* and *Varner* involved setting aside a judgment based on a mistake of fact under section 2122, subdivision (e). Richard did not seek relief under this subdivision.

discretion in the trial court's finding that Richard failed to establish that set-aside was warranted.

Finally, we find that Richard also did not meet his burden to establish that Patricia's purported misconduct materially affected his decision to sign the stipulated judgment. A party moving to set aside a judgment must produce evidence, beyond conclusory declarations, to "establish that the presence of at least one of these five grounds for relief [under section 2122] 'materially affected the original outcome' and that he or she 'would materially benefit from the granting of the relief.'" (*Rosevear, supra*, 65 Cal.App.4th at p. 684, quoting § 2121, subd. (b).)

Richard made no such showing. In fact, his declarations stated that he was forced to sign the stipulated judgment as a result of Patricia's emotional abuse and threats. He never claimed that if Patricia had provided full financial disclosures it would have resulted in a more equitable stipulated judgment. Richard argues that we must presume undue influence because "[w]hen an interspousal transaction advantages one spouse, '[t]he law, from considerations of public policy, presumes such transactions to have been induced by undue influence.'" (*Kieturakis, supra*, 138 Cal.App.4th at p. 84, quoting *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 293.) We note that the stipulated judgment, while favorable to Patricia, was significantly less favorable than the reported terms of the parties' postnuptial agreement. Moreover, to the extent the presumption applies, Patricia could dispel it with "evidence that the disadvantaged spouse entered into the transaction 'freely and voluntarily ... with a full knowledge of all the facts and with a complete understanding of the effect of the [transaction].'" (*Kieturakis, supra*, 138 Cal.App.4th at p. 84, quoting *In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 630.) Substantial evidence supports the court's implied finding that Richard was not subject to undue influence as a result of any faulty disclosures. As previously discussed, in addition to Richard's own statements about the reason he signed the stipulated judgment, there was evidence that Richard prepared Patricia's disclosures, drafted the postnuptial agreement, and had full knowledge of Patricia's finances.

18

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to her costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

COLLINS, ACTING P. J.

We concur:

MORI, J.

TAMZARIAN, J.

19